John Fox
509 Ventaja
Newport Beach, CA 92660
Tel. No. (714) 747-7907



FILED

NOV 2 0 2023

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

Debtor In Pro Pse

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT, STATE OF CALIFORNIA

| | |
|---|---|
| In re | ) BK 8:23-bk-12195-MH |
| | ) |
| JOHN FOX, | ) Chapter 13 |
|      Debtor. | ) |
| | ) **NOTICE OF REMOVAL OF** |
| | ) **CIVIL ACTION TO** |
| | ) **BANKRUPTCY COURT** |
| | ) |
| | ) |

Debtor JOHN FOX (hereinafter, "Debtor") alleges as follows:

1. The above-named Debtor filed in the United States Bankruptcy Court for the Central District, a voluntary petition for relief under Chapter 13 of Title 11, United States Bankruptcy Code on or about October 24, 2023.

2. Prior to the filing of Debtor's Chapter 13 bankruptcy petition, on or about May 27, 2021, Debtor filed an action against Radonix Inc., Maryam Golbaksh and Shahram Tork in the Orange County Superior Court, Case No. 30-2021-01203509-CU-CO-CJC ("Fox Action"). A true and correct copy of this "Fox Action" is attached and marked as Exhibit "1" and is incorporated herein by this reference. Prior to the filing of this action, Radonix Inc., had filed an action for Breach of Contract; Trespass and Quantum Meruit against Fox in the Orange County Superior Court, Case No. 30-2021-0120867-CU-CO-CJC. A true copy of the

3. On or about December 14, 2022, Fox Action was consolidated with the Radonix Action. A true copy of the Stipulated Consolidation is attached as Exhibit "2".

4. The facts of the Fox Action and the Radonix Action Action are as follows:

**The Fox Action**

This action alleged that Radonix Inc., Maryam Golbaksh and Shahram Tork had breached their oral contract with Debtor in that defendants refused to honor their agreement that would allow Debtor to buy back Debtor's real property located at "509 Ventaja, Newport Beach, California 92660 ("Ventaja Property") and that Defendants had committed fraud against Debtor. The Ventaja Property is part of Debtor's bankruptcy estate. The Fox Action also alleged that Maryam Golbakhs, who acted as Debtor's real estate broker had breached her fiduciary duty in the handling of the sale of Debtor's Ventaja Property.

**The Radonix Action**

This action alleged that Debtor had committed trespass and that Fox had allegedly also breached the contract against them.

5. The Fox Action where Debtor is the Plaintiff, and the Radonix Action where Debtor is a defendant, are of a civil nature of which the bankruptcy court has jurisdiction in that they are related to the said case under Chapter 11, United States Bankruptcy Code now pending in the United States Bankruptcy Code for the Central District, and is one that may be removed to this court pursuant to 28 U.S.C. §1452.

6. The time within which Debtor is allowed to file this application for removal of the Superior Court Main Action and the Cross-Complaint has not yet elapsed pursuant to Federal Rules of Bankruptcy Procedure, Rule 9027 (a)(2).

7. Upon removal of the consolidated actions of Fox Action and the Radonix Action, the proceeding is "core" and Debtor does consent to entry of a final order or judgment by the bankruptcy court.

DATED: November 20, 2023

_____

JOHN FOX, Debtor

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of Eighteen (18) years and not a party to the written entitled action; my business address

On November 20, 2023, I served the foregoing document described as NOTICE OF REMOVAL OF CIVIL ACTION TO BANKRUPTCY COURT to all interested parties in this action:

[ ] by placing [ ] the original [X ] a true copy thereof enclosed in a sealed envelope addressed as follows:

See Attached Service List

[ X ]   BY MAIL

[ X ]   I deposited such envelope in the mail at Newport Beach, California.
The envelope was mailed with postage thereon fully prepaid.

[ X ]   As follows:
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U. S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.
                I
am aware that on motion of the party served, service is presumed invalid of postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   (BY PERSONAL SERVICE) I personally delivered such envelope by hand to the office of the addressee(s).

[ ]   (STATE) I declare under penalty of perjury under the law of the State of California that the above is true and correct.

Executed on November 20, 2023, at Los Angeles, California.

___Kelly Hall_____          _____
Type or Print Name                                Signature

## SERVICE LIST

1.    Hon. Judge William Schwarm

      Orange County Superior Court, Dept. C32

      700 Civic Center Drive West

      Santa Ana, CA  92701


2.    J.M. O'Connor, Esq., c/o J.M. O'Connor Law Group, LLLC

      120 Newport Center Drive

      Newport Beach, CA  92660

**EXHIBIT "1"**

**FOX ACTION**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RADONIX, INC, a California corporation; SHAHRAH TORK, an Individual; MARYAM GOLBAKHSH aka MARY GOLBAKHSH, an Individual; DOES 1 to 50, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOHN DANIEL FOX

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

MAY 27 2021

DAVID H. YAMASAKI, Clerk of the Court

BY:_____,DEPUTY

*Assigned for All Purposes*

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Orange County Superior Court<br>700 Civic Center Drive West<br>Santa Ana, CA 92701 | CASE NUMBER: *(Número del Caso):*<br>**01 2 0 3 5 0 9** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):* **JUDGE CHARLES MARGINES**

John  Daniel Fox - 509 Ventaja, Newport Beach, CA 92660

| DATE:<br>*(Fecha)* 06-02-2021 | Clerk, by<br>*(Secretario)* J. GARCIA | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courts.ca.gov |
|---|---|---|

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>John Daniel Fox<br>509 Ventaja<br>Newport Beach, CA 92660<br><br>TELEPHONE NO.:                    FAX NO. *(Optional):*<br>ATTORNEY FOR *(Name):*  Plaintiff In Pro Per | FOR COURT USE ONLY<br><br>**FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE<br>CENTRAL JUSTICE CENTER<br><br>*May* 27 2021<br><br>DAVID H. YAMASAKI, Clerk of the Court<br><br>BY:_____,DEPUTY |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  ORANGE
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: Same as above
CITY AND ZIP CODE: Santa Ana 92701
BRANCH NAME: Central Justice Center

CASE NAME:
John Daniel Fox v. Radonix, Inc. et al

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER:  30-2021 |
|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter    [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:  01203509<br>DEPT.: |

JUDGE CHARLES MARGINES

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [X] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [X] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [ ] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties       d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel       e. [ ] Coordination with related actions pending in one or more
       issues that will be time-consuming to resolve           courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence           court
                                                            f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify):* 8
5. This case [ ] is  [X] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 03/10/2021

John Daniel Fox
_____                    ▶ _____
(TYPE OR PRINT NAME)                                     (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |
|---|---|---|

John Daniel Fox
509 Ventaja
Newport Beach, CA 92660
Tel. No. 714-747-7907

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

May 27 2021

DAVID H. YAMASAKI, Clerk of the Court

BY:_____,DEPUTY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

30-2021

**FOR THE COUNTY OF ORANGE**

01203509

| | |
|---|---|
| JOHN DANIEL FOX,<br>Plaintiff,<br><br>Vs.<br><br>RADONIX, INC., A California corporation;<br>SHAHRAM TORK, an Individual; MARYAM<br>GOLBAKHSH aka MARY GOLBAKHSH, an<br>Individual; ; DOES 1 to 50, Inclusive,<br>Defendants. | Case No.<br><br>**VERIFIED FIRST COMPLAINT FOR DAMAGES FOR**<br><br>**1.BREACH OF ORAL CONTRACT;**<br>**2. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**3. FRAUD – INTENTIONAL MISREPRESENTATION;**<br>**4. CONSPIRACY TO COMMIT FRAUD;**<br>**5. NEGLIGENT MISREPRESENTATION;**<br>**6. CONVERSION;**<br>**7. BREACH OF FIDUCIARY DUTY; and**<br>**8. INJUNCTIVE RELIEF**<br><br>Assigned for All Purposes<br><br>JUDGE CHARLES MARGINES<br><br>**[Amount Demanded Exceeds $25,000]** |

1

VERIFIED COMPLAINT FOR DAMAGES

Plaintiff JOHN DANIEL FOX (hereinafter "Plaintiff") hereby alleges as follows:

### THE PARTIES

1.      Plaintiff is, and at all times herein mentioned, was a resident of Los Angeles County, State of California.   At all times mentioned herein, Plaintiff has an interest in the property located at "509 Ventaja, Newport Beach, California 92660" ("Property") by way of Short Form Deed of Trust executed by Shahram Tork of Radonix, Inc., a California, corporation recorded with the Orange County Recorder's Office on December 24, 2020, as Document No. 2020000764290, and legally described as follows:

> "Lot 23 of Tract No. 6905, in the City of Newport Beach, County of Orange.
> State of California, as per map recorded in Book 308, Pages 27 to 32 inclusive
> of Miscellaneous Maps, in the Office of the County Recorder of said County."
> [APN: 440-281-26]

2.      Defendant RADONIX INC, is a California corporation, formed and established under the laws of the State of California on July 6, 2016, whose address is "2600 Michelson Drive, Suite 1700, Irvine, CA 92612" (hereinafter referred to as "Radonix"), under Entity No. C3924551.

3.      Defendant SHAHRAM TORK (hereinafter referred to as "Tork") is an individual, who is a resident of Orange County, State of California.   At all times mentioned herein, Tork is the Chief Executive Officer, Secretary and Chief Financial Officer of Radonix.

4.      Plaintiff is informed and believes, and based thereon alleges that MARYAM GOLBAKHSH aka MARY GOLBAKHSH (hereinafter referred to as "Golbakhsh"), is an individual, who is a resident of Orange County, State of California, and who represented to Plaintiff that she is a licensed real estate broker/agent licensed to engage real estate activities by the California Department of Real Estate in the State of California.   Plaintiff is further informed and believes, and based thereon alleges that Golbakhsh, as a real estate agent/broker is the Chief Executive Office, Secretary and Chief Financial Officer of MG Capital Group, Inc., (hereinafter referred to as "MG Capital")whose address is at 19200 Von Karman Avenue, 5th Floor, Irvine, California 92612.   Plaintiff is further informed and believes and based therein alleges that the corporate status of MG Capital is currently "FTB Suspended".

5.      The true names and capacities, whether individual, corporate, associate or otherwise, of

VERIFIED COMPLAINT FOR DAMAGES

Defendants named herein as Does 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will amend this Complaint when the identities of these Doe defendants have been ascertained.

6. Plaintiff is informed and believes, and based upon such information and belief alleges that all defendants sued herein as Doe Defendants are in some manner responsible for the acts herein alleged.

7. Plaintiff is informed and believes, and based upon such information and belief thereon alleges that at all times herein mentioned each of the Defendants was the agent, servant and/or employee of each of the other Defendants, and in doing the acts herein alleged, was acting within the scope of an agent, servant, and/or employee.

8. This action is filed in this judicial district because the subject Property is located in this judicial district.

9. Plaintiff is informed and believes, and based thereon allege, that this Court has personal jurisdiction of each and every Defendant wherever located in the United States, irrespective of whether any such Defendant does not have a place of business within the State of California, on the basis that: (1) each and every Defendant is conducting business within the State of California by virtue of its transactions with respect to the Property as alleged herein, and (2) each and every Defendant is seeking the protection and benefit of California law in conducting its business within the State of California.

## JURY TRIAL DEMAND

10. Plaintiff requests a jury trial in this matter.

## OLD LOANS SECURED BY THE PROPERTY

11. The Property is a single family home. Plaintiff is the former owner of the Property. This property has two (2) loans secured by the Property. The first trust deed was a conventional loan acquired by Plaintiff on or about April 9, 2016 from Impact Mortgage Corp. dba Cashcall Mortgage, a California corporation in the amount of $480,000, and as of December 24, 2020, had a balance of $448,433.38 plus late charges and fees of an additional $35,935.01 for a total amount of $484,368.19. There was a second trust deed with Worldwide Lenders, Inc., a Delaware

VERIFIED COMPLAINT FOR DAMAGES

corporation a private lender, which was acquired by Plaintiff on or about November 15, 2016, in the amount of $222,000 with a balance as of December 24, 2020 of $221,962.85 plus late fees and costs of additional $35,908.38, for a total amount of $257,871.23.

## PLAINTIFF'S DEFAULT IN PAYMENTS AND FORECLOSURE PROCEEDINGS
## AGAINST THE PROPERTY

12.     Due to Covid 19 pandemic, Plaintiff's primary source of income with AT&T Mobility, through a contract with Bechtel Corporation, on a contractor basis, for locating cell tower sites and processing the cell site developments, became non-existent, in the early part of 2020. Thus, Plaintiff fell behind in his payment obligations on the two loans.

13.     The first trust deed holder agreed to postponement of mortgage payments due to government requirements. However, the second trust deed commenced foreclosure proceedings against the Property, with an auction sale date set, reset and finally postponed to December 28, 2020.

## INTRODUCTION OF GOLBAKHSH TO PLAINTIFF
## AND NEW LOANS AGAINST THE PROPERTY

14.     In order to avoid imminent foreclosure of the Property, Plaintiff began searching for a new loan to replace and/or pay off the second trust deed, which would have been less than or around more or less $300,000 as a second hard money with 8% interest.  Plaintiff was introduced to Ms. Golbakhsh via phone, who claimed to be a real estate broker, to assist him in getting the new loan. Plaintiff was assured by Ms. Golbakhsh that she would be able to secure a new loan for Plaintiff to pay off the second trust deed holder.

15.     As the foreclosure of the second trust deed was fast approaching, Ms. Golbakhsh advised Plaintiff that the loan transaction would be quicker if the transaction would be converted into a sale transaction. Relying on Ms. Golbakhsh's advise and recommendation, and in order to avoid imminent foreclosure of the Property, Plaintiff reluctantly agreed.  On December 8, 2020, Golbakhsh opened an escrow at Security Escrow indicating that the Buyer would obtain a first trust deed of $840,000, and would deposit an additional amount of $360,000, for a total consideration of $1,200,000.  A true and correct copy of the Escrow Instruction dated December 8,

4

VERIFIED COMPLAINT FOR DAMAGES

2020, is attached as Exhibit "1".

16.     On or about December 12, 2020, Ms. Golbakhsh presented to Plaintiff a loan overview cost via WhatsApp of $840,000 as new first Trust Deed, which supposed to be $60,000 down and Plaintiff was to carry a $300,000 second trust deed, which according to Ms. Golbakhsh is needed in order to secure Plaintiff's equity on the Property. A true and correct copy of the loan overview cost as shown in the Whatsapp Chat is attached as Exhibit "2". As of that date, the Property had an appraised value of $1,200,000. Plaintiff was provided with a detailed breakdown of loan overview. Golbakhsh represented to Plaintiff that the buyer (Radonix) has agreed for Plaintiff to remain as an occupant of the Property in consideration for his execution of the second trust deed of $300,000 in favor of the buyer, and that he would pay the mortgage payments on behalf of the buyer, due on the new first trust deed; that she would keep funds of approximately $20,000 due to Plaintiff in an escrow trust account in order to pay for the mortgage payments due on the new first trust deed for the period covering February 1, 2021 through May 1, 2021. Goldbakhsh further represented to Plaintiff that he would be allowed to buy back the Property from the buyer for $900,000. Golbakhsh advised Plaintiff that the terms of the agreement would be reduced into writing. During this whole time, Plaintiff did not meet Golbakhsh in person. They've only communicated via phone and email. To date, neither Golbakhsh nor Radonix has reduced the agreement in writing.

17.     On or about December 17, 2020, Plaintiff was asked by Golbakhsh to go the office of Security Escrow in order to sign some escrow documents. This was the first time that Plaintiff met Golbakhsh in person.  Plaintiff also met Mr. Garces, who represented to him is the escrow officer in charge of the escrow. Plaintiff was presented with a Master Estimated Settlement Statement which stated as follows: "Seller: John Daniel Fox; New 1st Trust Deed: Center Street Lending, VIII SPE, LLC for $900,000; 2nd Trust Deed:  J.D. Fox. For $300,000", for a total consideration of $1,200,000. A true and correct copy of the Master Estimated Closing Statement is attached as Exhibit "3".

18.     On the same date, Plaintiff was asked to execute several documents, namely: (i) a Grant Deed conveying the title of the Property to Radonix. A true and correct of the Grant Deed is

5

VERIFIED COMPLAINT FOR DAMAGES

attached as Exhibit "4"; (ii) an Amended Escrow Instructions, wherein it stated that Radonix would execute a seller purchase money 2nd trust deed and note in the amount of $300,000 in favor of Plaintiff, and that the note would have no interest and shall be due and payable two years from close of escrow. A true and correct copy of the Amended Escrow Instruction dated December 17, 2020, is attached as Exhibit "5"; (iii) an Amended Instruction to Pay Commission in favor of Maryam Golbakhsh, in the amount of $19,125. A true and correct copy of the Amended Instruction dated December 17, 2020, is attached as Exhibit "6". Plaintiff neither met nor personally talked to Radonix or Tork. In fact, Ms. Golbakhsh inquired from Mr. Garces whether she could sign on behalf of Radonix or Mr. Tork, to which Mr. Garces said she could as long as there is a corporate resolution. At that time, Plaintiff realized that Ms. Golbakhsh could either be a business partner, business affiliate or associate of Tork and/or Radonix.

19.    Plaintiff is informed and believes, and based thereon alleges that on or about December 17, 2020, Radonix executed a Short Form Deed of Trust and Assignment of Rents in favor of Plaintiff acknowledging an indebtedness owed to Plaintiff in the amount of $300,000. This trust deed was executed by Mr. Tork, and was recorded with the Orange County Recorder's Office on December 24, 2020, as Document No. 2020000764290. A true and correct copy of the said trust deed is attached as Exhibit "7".

20.    On December 24, 2020, Plaintiff's escrow at Security Escrow was closed. On December 29, 2020, Security Escrow issued a Seller's Final Settlement Statement. However, much to Plaintiff's surprise that the loan charges that should have charged against Radonix was charged to him, contrary to his understanding that Radonix, as borrower, would be responsible for the payment of any and all charges on its loan with the lender, including but not limited to any loan application processing fees and mortgage broker fees that may be charged on the loan pursuant to the prevailing mortgage/loan broker industry.

The total amount of $43,942.50 was deducted from his net sale proceeds, which consisted of following: (i) Origination charge, $13,500; (ii) brokerage fee of Maryam Golbakhsh of $27,000; (iii) Processing fee of $1,495; (iv) NHD fee of $15.00; (v) Funding fee of $20.00; and (vi) Interest at $212.4000/day from 1223/2020 to 01/01/2021, of $1,912.50. Plaintiff was never

6

VERIFIED COMPLAINT FOR DAMAGES

advised of these deductions at the time Plaintiff signed the escrow instruction. A true and correct copy of the Seller's Final Settlement Statement is attached as Exhibit "8".

<div align="center">

**EVICTION PROCEEDINGS COMMENCED AGAINST**

**PLAINTIFF BY GOLBAKHSH AND RADONIX IN BREACH OF THE AGREEMENT**

</div>

21.     After the sale transaction between Plaintiff, Radonix, and Golbakhsh was completed, Plaintiff remained as an occupant of the Property pursuant to the representations by Golbakhsh and Radonix.

22.     On or about February 19, 2021, Plaintiff was surprised when he received two (2) text messages from Golbakhsh. The first text message he received from Ms.Golbakhsh stated as follows: "509 VENTAJA Newport Beach (which is the Property referenced in this complaint) will be in the market for sale by tomorrow." Then followed by a second text message which stated as follows: "By Monday the eviction process will start as well". Plaintiff was shocked because he could not believed that Golbakhsh and Radonix would renege on their agreement that he would be allowed to remain as an occupant on the Property and pay for the mortgage payment due on the new lender, and that Radonix would sell back the Property to him.

23.     Plaintiff was further shocked and surprised when he saw two (2) documents stapled on the mailbox and front gate of the Property entitled "Notice To Quit Holdover After Sale" (hereinafter referred to as "Notice"). The Notice stated that Plaintiff should deliver up of the Property to Radonix, or legal proceedings would be commenced against him to recover possession of the Property. A true and correct copy of the Notice is attached as Exhibit "9".

<div align="center">

**FIRST CAUSE OF ACTION**
**(BREACH OF ORAL CONTRACT AGAINST DEFENDANTS GOLBHSH,**
**RADONIX, TORK AND DOES 1 TO 10)**

</div>

24.     Plaintiff re-alleges and incorporates, all the allegations contained in paragraphs 1 to 23 of this complaint, as though fully set forth herein.

25.     On or about December 12, 2020, Plaintiff and Defendants Golbakhsh, Radonix and Torks, and Does 1 to 10, and each of them (hereinafter collectively referred to as "Defendants") verbally agreed (hereinafter referred to as "Agreement") to the following terms: (i) that in consideration for Plaintiff's execution of the second trust deed of $300,000 without interest in favor of the buyer

<div align="center">

7

**VERIFIED COMPLAINT FOR DAMAGES**

</div>

(Radonix), Plaintiff would be allowed to remain as occupant of the Property after the sale is completed; (ii) that Plaintiff could buy back the Property from Radonix; (iii) that he would pay the mortgage payments on behalf of the buyer, due on the new first trust deed; (iv) Defendant would withheld funds of approximately $20,000 due Plaintiff, and keep them in an escrow account in order to guarantee the payment for the mortgage payments due on the new first trust deed for the period covering February 1, 2021 through May 1, 2021. Defendants advised Plaintiff that the terms of the agreement would be reduced into writing. However, to date, neither Golbakhsh nor Radonix has reduced the agreement in writing.

26. Plaintiff has performed all conditions, covenants and promises required to perform by him except those conditions that were waived, excused or rendered impossible to be performed by Defendants. Pursuant to the Agreement, Plaintiff sold the Property to Radonix. He transferred the title of the Property to Radonix by executing a Grant Deed in Radonix's favor. (See Exhibit "4") He also carried a note and deed of trust in the amount of $300,000 without interest in favor of Radonix by executed a Short Form Deed Trust with Assignment of Trust. (See Exhibit "7")

27. Defendants breached the Agreement by, inter alia not complying with the terms and conditions of the Agreement. On or about February 19, 2021, Plaintiff was surprised when he received two (2) text messages from Golbakhsh, informing him that the Property would be in the market by February 20, 2021, and that the eviction process against Plaintiff would be commenced by February 22, 2021. Additionally, Plaintiff was further shocked and surprised when he saw two (2) documents stapled on the mailbox and front gate of the Property entitled "Notice To Quit Holdover After Sale" (hereinafter referred to as "Notice"). The Notice stated that Plaintiff should deliver up of the Property to Radonix, or legal proceedings would be commenced against him to recover possession of the Property. (See Exhibit "9").

28. As a proximate result of Defendants' breach of the agreement, Plaintiff has suffered damages in an excess of $400,000, to be proven at the time of trial.

///

<div align="center">8</div>

<div align="center">VERIFIED COMPLAINT FOR DAMAGES</div>

## SECOND CAUSE OF ACTION
### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALINGS AGAINST DEFENDANTS GOLBAKHSH, RADONIX AND TORK)

29.    Plaintiff re-alleges and incorporates, all the allegations contained in paragraphs 1 to 28 of this complaint, as though fully set forth herein.

30.    On or about December 12, 2020, Plaintiff and Defendants Golbakhsh, Radonix and Torks, and Does 1 to 10, and each of them (hereinafter collectively referred to as "Defendants") verbally agreed (hereinafter referred to as "Agreement") to the following terms: (i) that in consideration for Plaintiff's execution of the second trust deed of $300,000 without interest in favor of the buyer, Plaintiff would be allowed to remain as occupant of the Property after the sale is completed; (ii) that Plaintiff could buy back the Property from Radonix; (iii) that he would pay the mortgage payments on behalf of the buyer, due on the new first trust deed; (iv) Defendant would withhold funds of approximately $20,000 due Plaintiff, and keep them in an escrow account in order to guarantee the payment for the mortgage payments due on the new first trust deed for the period covering February 1, 2021 through May 1, 2021. Defendants advised Plaintiff that the terms of the agreement would be reduced into writing. However, to date, neither Golbakhsh nor Radonix has reduced the agreement in writing.

31.    Plaintiff has performed all of the covenants and conditions of the Agreement to be performed on his part, except to the extent that such performance has been prevented, excused, hindered or waived by Defendants.  Pursuant to the Agreement, Plaintiff sold the Property to Radonix. He transferred the title of the Property to Radonix by executing a Grant Deed in Radonix's favor.  (See Exhibit "4") He also carried a note and deed of trust in the amount of $300,000 without interest in favor of Radonix by executed a Short Form Deed Trust with Assignment of Trust. (See Exhibit "7")

32.    Plaintiff is informed and believes and on that basis alleges that every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the

9

VERIFIED COMPLAINT FOR DAMAGES

benefits of their agreement. This covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

33.     Plaintiff is informed and believes and on that basis alleges, that promises and assurances made by Defendants, as alleged in the Agreement, imposed upon the Defendants a duty of good faith and fair dealing in this matter.

34.     Plaintiff is informed and believes and on that basis alleges that Defendants enjoyed substantial discretionary power affecting the rights of Plaintiff during the events alleged in this complaint, and were required to exercise such power in good faith. In his manner, Defendants breached their duty of good faith and fair dealing.

35.     As a proximate of result of Defendants' wrongful and malicious action and conduct as above-described, Plaintiff was damaged in an amount in excess of $400,000, to be proven at the time of trial.

## THIRD CAUSE OF ACTION
### (FOR FRAUD - INTENTIONAL MISREPRESENTATION AGAINST DEFENDANT GOLBAKHSH, AND DOES 1 TO 10)

36.     Plaintiff re-alleges and incorporates, all the allegations contained in paragraphs 1 to 28 of this complaint, as though fully set forth herein.

37.     On or about December 12, 2020, in the County Los Angeles, State of California, Defendant Golbakhsh made the following false representations to Plaintiff: (i) that in consideration for Plaintiff's execution of the second trust deed of $300,000 without interest in favor of the buyer (Radonix), Plaintiff would be allowed to remain as occupant of the Property after the sale is completed; (ii) that Plaintiff could buy back the Property from Radonix; (iii) that he would pay the mortgage payments on behalf of the buyer, due on the new first trust deed; (iv) Defendant would withheld funds of approximately $20,000 due Plaintiff, and keep them in an escrow account in order to guarantee the payment for the mortgage payments due on the new first

10

VERIFIED COMPLAINT FOR DAMAGES

trust deed for the period covering February 1, 2021 through May 1, 2021. Defendants advised Plaintiff that the terms of the agreement would be reduced into writing. However, to date, neither Golbakhsh nor Radonix has reduced the agreement in writing.

38. The above representations made by Defendants was false. The truth of the matter is that Radonix would not allow Plaintiff to remain as an occupant of the Property, and sell back the Property back to Plaintiff. In fact, after the sale was completed, Defendants placed the Property in the market for sale, and commenced eviction proceedings against Plaintiff.

39. Defendants knew that the representations they made to Plaintiff, were false when they made it, and that they made the representations recklessly and without regard for its truth. Plaintiff is informed and believes, and based thereon alleges that when Defendants made the above representations, they had no intention of allowing Plaintiff to remain as an occupant of the Property. Instead, they intended to immediately place the Property on a market for sale in order to generate profit, and evict Plaintiff from his occupancy in the Property.

40. When Defendants made the above representation to Plaintiff, they intended that Plaintiff rely on the above representations.

41. Plaintiff reasonably relied on the representations made by Defendants because Defendants represented to him that she had been engaged in the real estate and lending business for a long time and has had reputable reputation in the real estate industry.

42. In reasonable reliance to Defendants' representations, Plaintiff sold the Property to Radonix. He transferred the title of the Property to Radonix by executing a Grant Deed in Radonix's favor. (See Exhibit "4") He also carried a note and deed of trust in the amount of $300,000 without interest in favor of Radonix by executed a Short Form Deed Trust with Assignment of Trust. (See Exhibit "7")

43. Plaintiff was harmed due to Defendants' misrepresentations as alleged in paragraphs 37 and 38, because he stands to be evicted from the Property, and stands to lose his equity of at least $360,000 in the Property.

44. As a proximate result of Defendants' intentional misrepresentations, Plaintiff has been

11

VERIFIED COMPLAINT FOR DAMAGES

damaged in an amount in excess of $400,000 to be proven at the time of trial.

45.     Defendants committed the above-mentioned actions, intentionally, maliciously, oppressively and fraudulently.  After Plaintiff agreed to sell the Property and transfer the title and ownership of the Property to Radonix, and further agreed to carry a second trust deed of $300,000 with interest in order to allow it to purchase the Property, Radonix immediately placed the Property on the market for sale in order to displace Plaintiff from his possession and occupancy of the Property.

## FOURTH CAUSE OF ACTION
### (FOR CIVIL CONSPIRACY TO COMMIT FRAUD AGAINST DEFENDANTS GOLBAKHSH, RADONIX, TORK AND DOES 1 TO 10)

46.     Plaintiff re-alleges and incorporates, all the allegations contained in paragraphs 1 to 45 of this complaint, as though fully set forth herein.

47.     On or about December 12, 2020, Defendants Golbakhsh, Radonix, Tork, Does 1 to 10, and each of them (hereinafter collectively referred to as "Defendants") knowingly and willfully conspired and agreed among themselves to falsely represent to Plaintiff (i) that in consideration for Plaintiff's execution of the second trust deed of $300,000 without interest in favor of the buyer (Radonix), Plaintiff would be allowed to remain as occupant of the Property after the sale is completed; (ii) that Plaintiff could buy back the Property from Radonix; (iii) that he would pay the mortgage payments on behalf of the buyer, due on the new first trust deed; (iv) Defendant would withheld funds of approximately $20,000 due Plaintiff, and keep them in an escrow account in order to guarantee the payment for the mortgage payments due on the new first trust deed for the period covering February 1, 2021 through May 1, 2021.

48.     Defendants and each of them did the acts and things herein alleged pursuant to, and in furtherance of the conspiracy, and furthered said conspiracy by cooperation with each other. After Plaintiff agreed to sell the Property and transfer the title and ownership of the Property to Radonix, and further agreed to carry a second trust deed of $300,000 with interest in order to allow it to purchase the Property, Radonix immediately placed the Property on the market for sale

VERIFIED COMPLAINT FOR DAMAGES

in order to displace Plaintiff from his possession and occupancy of the Property.

49.     As a proximate result of the wrongful acts alleged herein, Plaintiff has suffered damages in excess of $400,000 to be proven at the time of trial.

50.     Defendants did the things alleged herein maliciously and to oppress plaintiff. Plaintiff is thereto entitled to exemplary or punitive damages commensurate to Defendants' wealth.

**FIFTH CAUSE OF ACTION**
**(FOR NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS**
**AND DOES 1 TO 10)**

51.     Plaintiff re-alleges and incorporates, all the allegations contained in paragraphs 1 to 50 of this complaint, as though fully set forth herein.

52.     On or about December 12, 2020, in the County Los Angeles, State of California, Defendants Golbakhsh, Radonix, Tork, Does 1 to 10, and each of them (hereinafter collectively referred to as "Defendants") the following false representations to Plaintiff: (i) that in consideration for Plaintiff's execution of the second trust deed of $300,000 without interest in favor of the buyer (Radonix), Plaintiff would be allowed to remain as occupant of the Property after the sale is completed; (ii) that Plaintiff could buy back the Property from Radonix; (iii) that he would pay the mortgage payments on behalf of the buyer, due on the new first trust deed; (iv) Defendant would withheld funds of approximately $20,000 due Plaintiff, and keep them in an escrow account in order to guarantee the payment for the mortgage payments due on the new first trust deed for the period covering February 1, 2021 through May 1, 2021. Defendants advised Plaintiff that the terms of the agreement would be reduced into writing. However, to date, neither Golbakhsh nor Radonix has reduced the agreement in writing.

53.     That although Defendants may have honestly believed that the above representations were true, Defendants had no reasonable grounds for believing that their representations were true when they made it. In fact, above representations made by Defendants in paragraph 37 was false. The truth of the matter is that Defendants they had no intention of allowing Plaintiff to remain as an occupant of the Property. Instead, they intended to immediately placed the Property on a market for sale in order to generate profit, and evict Plaintiff from his occupancy in the Property.

54.     When Defendants made the above representation to Plaintiff, they intended that Plaintiff

13
VERIFIED COMPLAINT FOR DAMAGES

rely on the above representations.

55.     Plaintiff reasonably relied on the representations made by Defendants because Defendants represented to him that she had been engaged in the real estate and lending business for a long time and has had reputable reputation in the real estate industry.

56.     In reasonable reliance to Defendants' representations, Plaintiff sold the Property to Radonix.  He transferred the title of the Property to Radonix by executing a Grant Deed in Radonix's favor.  (See Exhibit "4") He also carried a note and deed of trust in the amount of $300,000 without interest in favor of Radonix by executed a Short Form Deed Trust with Assignment of Trust. (See Exhibit "7")

57.     Plaintiff was harmed due to Defendants' misrepresentations as alleged in paragraphs 37 and 38, because he stands to be evicted from the Property, and stands to lose his equity of at least $400,000 in the Property.

58.     As a proximate result of Defendants' intentional misrepresentations , Plaintiff has been damaged in an amount in excess of $400,000 to be proven at the time of trial.

## SIXTH CAUSE OF ACTION
## (CONVERSION AGAINST DEFENDANT GOLBAKHSH
## AND DOES 1 TO 10)

59.     Plaintiff re-alleges and incorporates, all the allegations contained in paragraphs 1 to 58 of this complaint, as though fully set forth herein.

60.     On or about December, 12, 2020, Defendants agreed to withhold funds in the amount of $20,000 due Plaintiff from the sales proceeds of the Property, which was intended as Plaintiff's payment for remaining as an occupant of the Property for the period covering February 1, 2021 through May 1, 2021.  Additionally, much to Plaintiff's surprise loan charges in the total amount of $43,942.50 that should have been charged against Radonix was unreasonably and improperly charged against Plaintiff's net sale proceeds.  This is contrary to Plaintiff's understanding that Radonix, as borrower, would and should be responsible for the payment of any and all charges on its loan with the lender, including but not limited to any loan application processing fees and mortgage broker fees that may be charged on the loan pursuant to the prevailing mortgage/loan

14

VERIFIED COMPLAINT FOR DAMAGES

brokerage industry. Defendants without Plaintiff's authority and consent, wrongfully misappropriated the total amount of $63,942.50,

61. As a direct and proximate result of the conversion by the Defendants, and each of them, the above-alleged Plaintiff has been damaged of $63,942.50, and more specifically according to proof to be presented at the time of trial.

62. Defendant Golbakhsh committed the above-mentioned actions, intentionally, maliciously, oppressively and fraudulently. After Plaintiff agreed to sell the Property and transfer the title and ownership of the Property to Radonix, and further agreed to carry a second trust deed of $300,000 with interest in order to allow it to purchase the Property, Radonix immediately placed the Property on the market for sale in order to displace Plaintiff from his possession and occupancy of the Property.

63. As a direct and proximate result of the conversion by the Defendants, and each of them, the above-alleged Plaintiff has been damaged of $63,942.50, and more specifically according to proof to be presented at the time of trial.

## SEVENTH CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT GOLBAKHSH AND DOES 1 TO 10)

64. Plaintiff re-alleges and incorporates, all the allegations contained in paragraphs 1 to 58 of this complaint, as though fully set forth herein.

65. Defendant Golbakhsh, a licensed real estate agent, working within the scope of her employment with Plaintiff, caused Plaintiff to report trust and confidence in Defendant in connection with Plaintiff's sale transaction involving the Property. Defendant voluntarily accepted a fiduciary role with respect to Plaintiff, including the duty to act with the utmost good faith, loyalty, and in the best interest of Plaintiff.

66. Defendant Golbakhsh acted on Plaintiff's behalf in handling the sale transaction involving the Property.

67. Defendant Golbakhsh failed to act as a reasonably careful broker and licensed real estate

15

VERIFIED COMPLAINT FOR DAMAGES

agent would have acted under the same or similar circumstances in that she allowed the loan charges in the total amount of $43,942.50 that should have been charged against Radonix to be wrongfully and improperly charged against Plaintiff's net sale proceeds. This is contrary to his understanding that Radonix, as borrower, would and should be responsible for the payment of any and all charges on its loan with the lender, including but not limited to any loan application processing fees and mortgage broker fees that may be charged on the loan against the borrower pursuant to the prevailing mortgage/loan brokerage industry.

68. As a direct result, Plaintiff was harmed.

69. Defendant Golbakhsh conduct was a substantial factor in causing Plaintiff's harm.

70. As a direct and proximate result of the conversion by the Defendants, and each of them, the above-alleged Plaintiff has been damaged of $43,942.50, and more specifically according to proof to be presented at the time of trial.

### EIGHTH CAUSE OF ACTION
### INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

71. Plaintiff re-alleges and incorporates, all the allegations contained in paragraphs 1 to 70 of this complaint, as though fully set forth herein.

72. Defendants Golbakhsh, Radonix, Tork. Does 1 to 10, and each of them, (hereinafter collectively as "Defendants"), after Plaintiff agreed to sell the Property and transfer the title and ownership of the Property to Radonix, and further agreed to carry a second trust deed of $300,000 with interest in order to allow it to purchase the Property, Radonix immediately placed the Property on the market for sale in order to displace Plaintiff from his possession and occupancy of the Property.

73. Plaintiff will suffer great and irreparable injury if Defendants, and each of them are not enjoined and/or restrained from further proceeding with placing the Property on the market for sale and in commencing eviction proceedings against Plaintiff.

74. Unless so restrained and enjoined, Defendants will proceed with its construction work at the Property and start renting it out to prospective tenants, and Plaintiff will lose his rights, title

VERIFIED COMPLAINT FOR DAMAGES

and interest on the Property.

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

**On The First Cause of Action for Breach of Oral Contract, And Second Causes of Action for Breach of Covenant of Good Faith and Fair Dealing:**

1.    For actual damages in excess of $380,000, to be proven at trial.

**On The Third Cause of Action for Fraud and Fourth Cause of Action For Conspiracy to Commit Fraud:**

1.     For actual damages in excess of $380,000 to be proven at trial.

2.    For punitive damages to set example of Defendants commensurate to Defendants' wealth.

**On The Fifth Cause of Action:**

1.  For actual damages in excess of $380,000, to be proven at trial.

**On The Fifth Cause of Action For Conversion:**

1.   For actual damages in excess of $63,942.50 to be proven at trial.

2.   For punitive damages to set example of Defendants commensurate to Defendants' wealth.

**On the Seventh Cause of Action for Breach of Fiduciary Duty:**

1.   For actual damages in excess of $43,942.50 to be proven at trial.

**On The Eighth Cause of Action for Injunctive Relief:**

1. For a stay, temporary restraining order, preliminary injunction, and permanent injunction Court enjoining and restraining Defendants from proceeding , and each of them from further proceeding to place the Property on the market for sale and with their eviction proceedings against Plaintiff.

**On All Causes of Action:**

1.     For costs of suit;

2.     For such other relief that this court may deem appropriate.

DATED: March 10, 2021

JOHN DANIEL FOX
Defendant In Pro Per

17

VERIFIED COMPLAINT FOR DAMAGES

## VERIFICATION

I, the undersigned, certify and declare that I have read the foregoing Verified Complaint for Breach Contract; Breach of Covenant of Good Faith and Fair Dealing; Fraud- Intentional Misrepresentation; Conspiracy to Commit Fraud; Negligent Misrepresentation; Conversion and Injunctive Relief, and know its contents.

I am the party to this action. The matters stated in the document described above are true of my own knowledge and belief except as to those matters stated on information and belief, and as to those matters I believe them to be true.

Executed on March 10, 2021 at Newport Beach, California.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

JOHN DANIEL FOX

18

VERIFIED COMPLAINT FOR DAMAGES

# EXHIBIT "1"



# SECURITY LAND ESCROW COMPANY

10805 Paramount Blvd., Suite A • Downey, CA 90241
(562) 862-2129
Fax: (562) 869-5547

## SECURITY LAND ESCROW COMPANY IS LICENSED BY THE DEPARTMENT OF BUSINESS OVERSIGHT OF THE STATE OF CALIFORNIA, LICENSE NUMBER 9630268

### SALE ESCROW INSTRUCTIONS

Lawrence Garces
Escrow Officer

Escrow No.: 049541
Date: December 8, 2020

Prior to close of escrow, buyer will deposit an additional amount of ........................................................ 360,000.00
Buyer herein to obtain a new first trust deed loan in the amount of ........................................................ $840,000.00

**Total Consideration** ........................................................ **$1,200,000.00**

Buyer/Seller will deliver to SECURITY LAND ESCROW COMPANY as Escrow holder any instruments which this escrow requires, fully executed, all of which SECURITY LAND ESCROW COMPANY is instructed to use provided that on or before **January 22, 2021** (close escrow) you hold a policy of title insurance with title company's usual exceptions, with liability of **$1,200,000.00** covering the following described property:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF

**SELLER STATES THAT THE PROPERTY ADDRESS IS:** 509 VENTAJA, NEWPORT BEACH, CA  92660

**TITLE POLICY TO SHOW TITLE VESTED IN:** RADONIX, INC., a California Corporation

**FREE FROM ENCUMBRANCES EXCEPT:**

(1)     Second HalfGeneral and special Taxes for the fiscal year 2020 and 2021, including bonds, special assessments and personal property taxes, if any, assessed against former owner, and/or supplemental taxes assessed pursuant to the provisions of Chapter 498, Statutes of 1983 of the State of California. (Change of Ownership will affect the taxes to be paid.  A Supplemental Tax Bill will be issued and BUYER accepts all responsibility for all additional taxes due because of said reassessment.  TAX BILLS ISSUED AFTER THE CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYERS AND SELLERS.)

(2)     Covenants, conditions, restrictions, reservations, rights, rights of way, and easements, and any oil, gas, or mineral reservations now of record, if any.

(3)     First Deed of Trust to record securing a note in the amount of $840,000.00.

**INSTRUCTIONS:**

A.     **FINANCE:** First Deed of Trust to file, and note secured thereby in the amount of $840,000.00 in favor of lender of Buyer's choice as per their terms, to be obtained by buyer at buyer's expense.  Said loan to be at the best

(CONTINUED)

Seller's Initials: _____/_____          Buyer's Initials: _____/_____

Date:  December 8, 2020                                                                    scrow No.:  049541

Page 2 of 9:  Additional instructions made a part of previous pages as fully incorporated therein.

prevailing rate and terms.   Buyer's signature on said documents shall be indication of their approval of all terms and conditions contained therein and Escrow Holder's authorization for the use of same.

B.     You are hereby authorized to secure and pay from sellers funds the demand(s) of trust deed holder(s) for reconveyance of existing trust deed(s) of record.

C.     You are hereby authorized and instructed to order a Natural Hazard Disclosure Package on the subject property to be handed to buyer herein and you are further instructed to charge sellers account at the close of escrow and pay the invoice for said report.

D.     The undersigned buyer has inspected the subject property and is purchasing the same based upon that inspection and is not in reliance on any representation, implied or stated, of the seller or any selling agent for broker.  Buyer understands that this sale is made without representation, warranty or covenant of any kind, expressed or implies, and that buyer is purchasing the subject property in its "AS IS" condition.

E.     **HOLD OPEN FEE:**  Notwithstanding any other provisions in these instructions, and in addition to other fees and costs to which Escrow Holder may be entitled, the parties, jointly and severally, agree that if this escrow transaction is not consummated within ninety (90) days of the date set for closing, or if Escrow Holder is required to hold funds after close of escrow, Escrow Holder is instructed to withhold Escrow Holder's hold open fee of fifty dollars ($50.00) per month from the funds on deposit with Escrow Holder regardless of who deposited such funds without further instruction.  If this escrow transaction fails to close, the parties irrevocably instruct Escrow Holder to automatically cancel this file without further instruction when all funds on deposit have been disbursed.

        Seller's Initials: ___/___                                    Buyer's Initials:  ___/___

F.     **CLOSING FUNDS:**  Each party acknowledges that the close of escrow is conditioned on check clearances. Funds to close must be in the form of a Cashier's Check drawn on a bank with clearing house in the State of California OR a wire transfer to SECURITY LAND ESCROW COMPANY Trust Account and be deposited at least (2) two business days prior to recording of documents.

G.     **1099 FORM:**  If required by law, the seller shall hand to Escrow Holder an IRS gross proceeds report, which you are to forward to the IRS in accordance with the law, and a copy thereof is to be delivered to the seller at the close of escrow.  This is NOT in lieu of any tax withholding which may become applicable under FIRPTA. ESCROW HOLDER IS AUTHORIZED AND INSTRUCTED TO INSERT BUYER'S PART OF REAL ESTATE TAX PAID, OVER THE SIGNATURE OF THE SELLER, ON SAID 1099, AT THE CLOSE OF ESCROW WITHOUT ANY LIABILITY ON THE PART OF ESCROW HOLDER FOR SO DOING.

H.     IN THE EVENT EITHER PARTY REQUESTS CANCELLATION OF THIS ESCROW AT ANY TIME, ALL PARTIES ARE AWARE THAT THIS ESCROW WILL NOT BE CONSIDERED CANCELLED, AND NO FUNDS WILL BE DISBURSED UNTIL ESCROW HOLDER HAS RECEIVED MUTUALLY SIGNED CANCELLATION INSTRUCTIONS FROM ALL BUYERS AND SELLER.

I.      **CALFIRPTA DISCLOSURE:**
        Seller/ Transferor and Buyer or other Transferee are hereby notified that in accordance with Section 18805 and 26131 of the Revenue and Taxation Code, a buyer may be required to withhold an amount equal to 3 1/3 percent of the sales price, in the case of a disposition of California real property interest by either:

        1. A seller who is an individual with a last known street address outside of California or when the disbursement instructions authorize the proceeds be sent to a financial intermediary of the seller, OR

        2. A corporate seller which has no permanent place of business in California

                                                                      (CONTINUED)

Seller's Initials: ___/___                                    Buyer's Initials:  ___/___

Date:  December 8, 2020                                                                  Escrow No.:  049541

Page 3 of 9:  Additional instructions made a part of previous pages as fully incorporated therein.

For failure to withhold, the buyer may become subject to a penalty in an amount equal to the greater of 10 percent of the amount required to be withheld or five hundred dollars ($500.00).

However, notwithstanding any other provision included in the California statutes referenced above, no buyer will be required to withhold any amount or be subject to penalty for failure to withhold if:

1. The sales price of the California real property conveyed does not exceed one hundred thousand dollars ($100,000.00), OR

2. The seller executes a written certificate, under the penalty of perjury, certifying that the seller is a resident of California, or if a corporation, has a permanent place of business in California, OR

3. The seller, who is an individual, executes a written certificate, under the penalty of perjury, that the California real property being conveyed is the seller's principal residence (as defined in Section 1034 of the Internal Revenue Code).

"The seller is subject to penalty for knowingly filing a fraudulent certificate for the purpose of avoiding the withholding requirement.

The California statues referenced above include provisions which authorize the Franchise Tax Board to grant reduced withholding and waivers from withholding on a case-by-case basis".

Seller/Transferor and Buyer also acknowledge and understand that in NO event will escrow holder undertake to advise them and/or their representative(s) as to the legal effect or possible application of any requirements to withhold, to report or to transmit to the Franchise Tax Board of any withholding as may relate to this transaction. Further, Seller/Transferor and Buyer or other Transferee understand that Real Estate Escrow Agent will in no manner be required to assist in obtaining or requesting the Franchise Tax Board to authorize a waiver from withholding or reduced amount of withholding before title is transferred.

ADDITIONAL INFORMATION IS AVAILABLE FROM THE FRANCHISE FAX BOARD , WITHHOLDING AT SOURCE UNIT, P.O. BOX 651, SACRAMENT, CA  95812-0651, OR BY PHONE AT: (916) 845-4900, OR BY FACSIMILE (FAX) MACHINE WHICH MAY BE COORDINATED BY CALLING (916) 369-4831

FIRPTA DISCLOSURE:

Seller agrees to furnish Buyer, prior to close of escrow all documentation required by provisions of Internal Revenue Section 1445 and Buyer is authorized to withhold and deduct any and all amounts required by said SECTION 1445.

If escrow Holder receives no written notice to the contrary from the Buyer herein prior to the close of escrow, then it shall be deemed that this transaction is exempt and that Seller has provided Buyer with all necessary documentation and that no withholding is required under the above mentioned provision.

J.      PRORATIONS: Prorate as of Close of Escrow
   •      Real Property taxes based on latest tax bill or on amount furnished by title company.

************************************************************

THESE ESCROW INSTRUCTIONS ARE NOT INTENDED TO SUPERSEDE THE REAL ESTATE PURCHASE CONTRACT AND RECEIPT FOR DEPOSIT, BUT TO CARRY OUT ITS TERMS AND CONDITIONS IN CONSUMMATING THE PURCHASE AND SALE, EXCEPT AS MAY BE AMENDED OR MODIFIED BY THE MUTUAL WRITTEN INSTRUCTIONS OF THE PARTIES.

(CONTINUED)

Seller's Initials: _____ / _____                                      Buyer's Initials: _____ / _____

Date:  December 8, 2020                                         )crow No.:  049541

Page 4 of 9:  Additional instructions made a part of previous pages as fully incorporated therein.

(CONTINUED)

Seller's Initials: _____ /_____                    Buyer's Initials: _____ /_____

Date:  December 8, 2020

scrow No.:  049541

Page 5 of 9:  Additional instructions made a part of previous pages as fully incorporated therein.

## GENERAL PROVISIONS

1. **AGREEMENT TO BE BOUND BY GENERAL PROVISIONS:** The Parties agree to execute these instructions and any supplemental instructions presented by Escrow Holder confirming their agreement to be bound to any additional terms and conditions of Escrow Holder, including Escrow Holder's general provisions, and authorize Escrow Holder to resign from processing this escrow transaction if mutual agreement cannot be reached between the Parties and Escrow Holder relative to the terms and conditions of Escrow Holder's duty. THESE ESCROW INSTRUCTIONS ARE NOT INTENDED TO SUPERSEDE THE REAL ESTATE PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS, BUT TO CARRY OUT ITS TERMS AND CONDITIONS IN CONSUMMATING THIS PURCHASE AND SALE, EXCEPT AS MAY BE AMENDED OR MODIFIED BY THE MUTUAL WRITTEN INSTRUCTIONS OF THE PARTIES.

2. **COMMENCEMENT OF ESCROW HOLDER DUTY:** This escrow transaction is deemed open, and Escrow Holder's duty commences, upon receipt of mutual or matching escrow instructions, signed by all Parties and the initial, good faith deposit are deposited with Escrow Holder.

3. **DUTIES OF ESCROW HOLDER:** The Parties agree that Escrow Holder has only those responsibilities inherent of an escrow service provider and that there are no other legal relationships established between Escrow Holder and the Parties by way of this escrow transaction. Those duties are limited to the safekeeping of such money and documents received by Escrow Holder and for the disposition and/or disbursement of same in accordance with the written instructions accepted by Escrow Holder in this Escrow. Escrow Holder shall not be liable for any damages, losses, costs, or expenses incurred by any Party in the handling and processing of this escrow transaction as a result of any act or failure to act made or omitted in good faith or for any action taken that Escrow Holder shall in good faith believe to be genuine, excepting such as may arise through or be caused by Escrow Holder's willful neglect or gross misconduct.

4. **PROMISE TO PAY AND INDEMNIFY:** The Parties hereby jointly and severally promise and agree to pay promptly on demand, as well as to indemnify Escrow Holder and hold Escrow Holder harmless from and against all litigation and interpleader costs, damages, judgments, attorney's fees, expenses, obligations, and liability of every kind which in good faith Escrow Holder may incur or suffer in connection with or arising out of this escrow transaction, whether said litigation, interpleader, obligation, liability or expense arises during the performance of this escrow transaction or subsequent thereto, directly or indirectly. The Parties agree to pay Escrow Holder a reasonable fee for all time spent by officers or employees of Escrow Holder in connection with any dispute resolution action taken relative to this escrow transaction including but not limited to time spent researching, reviewing and/or testifying relative thereto.

5. **UNJUST ENRICHMENT:** In the event any Party to this escrow transaction received funds or is credited funds to which they are not entitled, said Party agrees, upon written demand, to return said funds immediately to escrow for correct disbursement.

6. **DEPOSIT OF FUNDS:** Escrow Holder is instructed to deposit all funds received by Escrow Holder with any state or national bank in a trust account in the name of Escrow Holder, without any liability for payment of interest. All deposits made by personal check, cashier's check, certified check, or deposit other than cash or wire transfer are subject to clearance and payment by the financial institution upon which they are drawn. Funds deposited with Escrow Holder in the form of check or similar instrument will be identified as collected funds when the Escrow Holder's financial institution confirms that the funds are available for disbursement. BE ADVISED THAT CYBER CRIMINALS ARE USING PHISHING TECHNIQUES (AKA USING THE INTERNET TO ACQUIRE SENSITIVE INFORMATION SUCH AS USERNAMES, PASSWORDS, AND CREDIT CARD DETAILS AND SOMETIMES, INDIRECTLY, MONEY, OFTEN FOR MALICIOUS REASONS, BY MASQUERADING AS A TRUSTWORTHY ENTITY IN AN ELECTRONIC COMMUNICATION) TO TRY AND DIVERT WIRES COMING INTO AND GOING OUT OF ESCROW COMPANIES. TO AVOID SUCH SCAMS, PRIOR TO SENDING ANY WIRE TO ESCROW HOLDER, THE WIRING PARTY MUST CONTACT ESCROW HOLDER TO CONFIRM THE APPROPRIATE WIRING INSTRUCTIONS. BUYER'S DEPOSIT OF FINAL CLOSING FUNDS SHALL BE DEED BUYER'S FULL APPROVAL OF THE CONDITION OF THE SUBJECT PROPERTY, THE PRELIMINARY REPORT, ALL DISCLOSURES PROVIDED, THE WALK-THROUGH, ALL ASSOCIATION DOCUMENTS, AND THE TERMS AND CONDITIONS OF THE NEW LOAN(S), IF ANY.

7. **GOOD FUNDS LAW:** Pursuant to California Insurance Code Section 12413.1, known as the Good Funds Law, the Parties hereto are made aware that closing funds deposited by the Parties and/or lender must be cleared funds prior to close of escrow. This law places some very specific constraints upon the time frames for funds to be made available for disbursement. Close of escrow cannot occur before funds are cleared and immediately collectible and available for withdrawal, which clearance can range from being immediately available upon receipt to seven (7) days depending on the form deposit. The Parties hereby release Escrow Holder of any responsibility, claim, and/or liability in connection with such a delay caused by the manner in which closing funds or lender's funds are deposited.

8. **RELEASE OF FUNDS:** In the event the Parties to this escrow transaction instruct Escrow Holder to release funds prior to close of escrow, regardless of the fact that this escrow transaction has not closed and/or documents are not yet recorded, the Parties hereby release, relieve, indemnify and agree to hold harmless Escrow Holder from any and all liability and/or responsibility, both legally and equitably, which may arise, including but not limited to any legal actions, attorney's fees, costs or claims of any kind, either now, during the course of this escrow transaction, or subsequent to the close of this escrow transaction by reason of Escrow Holder complying with said release of funds, and Escrow Holder shall not be responsible to assist in the recovery of same in the event that this escrow transaction is not consummated.

9. **PAYMENT OF COSTS:** The Parties hereby authorize Escrow Holder to pay from funds deposited into this escrow transaction, all charges for publications, recordings, filings, searches, preliminary reports, and other services required by this escrow, when incurred, with no further authorization on the part of any Party. The Parties hereto authorize Escrow Holder to pay from funds deposited into this escrow transaction, all escrow fees, attorney fees, and costs or other charges incurred by Escrow Holder in connection with this escrow transaction with no further authorization on the part of any Party.

10. **COSTS AND CHARGES:** From funds due Seller at the close of escrow, deduct and pay encumbrances of record, plus accrued interest, charges and prepayment penalties, if any, bonds and/or assessments, and any delinquent monthly installment(s) on existing encumbrance(s) as disclosed by beneficiary statement(s), and any county and/or city transfer fees, costs and charges in this transaction which may include, but are not limited to: the Owner's Policy of title insurance, documentary transfer tax, reconveyance fees, recording fee's, Seller's customary escrow fees, fees for preparation, notarization and recording of documents as necessary on Seller's behalf, wire fees, messenger and overnight delivery fees, Seller's portion of the sub-escrow fee, and Broker compensation as per separate agreement.
Buyer agrees to pay all Buyer's usual costs and charges in this transaction which may include, but are not limited to: Buyer's customary escrow fees, document preparation fees, email document fees, wire fees, messenger and overnight delivery fees, all fees and charges in connection with the new loan(s), Buyer's portion of the sub-escrow fee, recording charges, and inspection fees.

11. **IN-HOUSE NOTARY FEES:** It is understood and agreed that any Notary Public services rendered by an employee of Escrow Holder may charge the account of the receiving party for the actual notary fee(s) incurred, at the maximum rate set forth by the California Secretary of state, and same will be paid at the close of escrow without further approval thereon.

12. **OUTSIDE SIGNING/NOTARY SERVICES:** It is understood and agreed that any Notary Public/Signing invoices submitted to Escrow Holder

(CONTINUED)

Seller's Initials: _____ / _____

Buyer's Initials: _____ / _____

Date: December 8, 2020                                                                          Escrow No.: 049541

Page 6 of 9: Additional instructions made a part of previous pages as fully incorporated therein.

for services performed by a third-party service or outside of Escrow Holder's regular office will be deemed approved for payment without further approval from the parties herein.

13. STATUTE OF LIMITATIONS: These instructions are to be construed and interpreted according to California Law. NO ACTION SHALL LIE AGAINST ESCROW HOLDER FOR ANY CLAIM, LOSS, LIABILITY OR ALLEGED CAUSE OF ACTION OF ANY KIND OR NATURE WHATSOEVER, HOWEVER CAUSED OR OCCURRED, IN THIS ESCROW TRANSACTION OR IN CONNECTION WITH THE HANDLING OR PROCESSING OF THIS ESCROW TRANSACTION, UNLESS BROUGHT WITHIN TWELVE (12) MONTHS AFTER THE CLOSE OF ESCROW OR ANY CANCELLATION OR TERMINATION OF ESCROW FOR ANY REASON WHATSOEVER.

14. WRITTEN INSTRUCTIONS REQUIRED: Pursuant to California Civil Code Section 1624, no notice, demand, supplemental escrow instruction, or amendment of the escrow instructions (hereinafter collectively "supplemental instructions") shall be effective unless given in writing by the Parties affected thereby. Escrow Holder shall not act upon or consider such supplemental instruction to have any validity until same is fully executed and delivered to Escrow Holder by all Parties concerned.

15. AUTHORIZATION TO ACCEPT ELECTRONIC SIGNATURES AND DOCUMENTS: In accordance with California's Uniform Electronic Transactions Act (the "Act"), the Parties hereby authorize Escrow Holder to accept electronic and/or digital signatures and records, transmitted via facsimile or other electronic means (collectively "electronic signatures") into this escrow as originals. The Parties expressly agree that this transaction can be conducted electronically, at the option of the Parties, to the fullest extent possible under the Act and recording laws. The Parties agree to transmit original, wet signatures on (1) all documents to be recorded, (2) all documents excluded from being enforceable under the Act, and (3) all documents required to be in original form by any regulatory agency. The Parties agree to verify any and all electronic signatures upon request of Escrow Holder.

16. ACTS OUTSIDE OF ESCROW AND MEMORANDA ITEMS: Whenever provision is made herein for the payment of any sum, the delivery of any document, or the performance of any act "outside of escrow", Escrow Holder shall have no responsibility therefor, shall not be concerned therewith, and is specifically relieved of any obligation relative thereto. Escrow Holder is expressly instructed not to act upon or be concerned with or liable for those items designated in the purchase agreement, escrow instructions, or supplemental instructions as memoranda items between the Parties, nor any other agreement between the Parties not expressly addressed to Escrow Holder in the form of a supplemental instruction.

17. NO DUTY TO DISCLOSE OR INSPECT: Escrow Holder's sole duty relative to disclosures shall be the payment of invoices presented to Escrow Holder. Escrow Holder is not to be concerned with the giving of any disclosures except as expressly required to be given by an escrow service provider pursuant to Federal or State law, including but not limited to those disclosures related to lending, zoning, land division, property condition, or usury. Neither will Escrow Holder conduct any lien search or title searches relative to personal property in connection with the sale or transfer of personal property through this escrow transaction, if any. Escrow Holder urges the Parties to seek appropriate counsel from an attorney or licensed broker to ascertain what disclosures and/or laws, if any, need to be complied with prior to close of escrow. The Parties jointly and severally agree to indemnify and hold harmless Escrow Holder by reason of any misrepresentation or omission by a Party or agents or failure of the Parties to this escrow transaction to comply with the rules and/or regulations of any governmental agency, whether state, federal, county, municipal, or otherwise and Escrow Holder is not to be concerned with enforcement of same. If presented with an invoice in connection with any disclosure Escrow Holder is authorized to pay same without further instructions. Escrow Holder will make no physical inspection of the real property and/or personal property that is the subject of this escrow transaction, and Escrow Holder is not to be concerned with or liable for the condition of same.

18. FEDERAL TAX REPORTING: The Parties acknowledge their awareness of the fact that, upon transfer of property, Escrow Holder must provide information pertaining to the escrow transaction to the Internal Revenue Service as required by Internal Revenue Code Section 6045(e) relative to the production of 1099 forms. The Parties agree to provide Escrow Holder all information necessary to produce the tax reporting documentation in compliance with Federal Law.

19. FEDERAL TAX WITHHOLDING: The sale of a U.S. real property interest by a foreign person is subject to the Foreign Investment in Real Property Tax Act of 1980 ("FIRPTA") income tax withholding. This law authorizes the United States to tax foreign persons on the sale of U.S. real property interests. Persons purchasing U.S. real property interests from foreign persons, certain purchasers' agents, and settlement officers may be required to withhold a portion of the amount realized. Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The purchaser is liable if the withholding is not made when required. The Parties agree to execute and deliver to Escrow Holder any instrument, affidavit and statement or to perform any act reasonably necessary to carry out the provisions of FIRPTA and regulations promulgated thereunder.

20. STATE TAX WITHHOLDING: The following disclosure is being provided pursuant to California law for all escrow transactions wherein a transfer of title is being completed as part of the escrow transaction. In accordance with Section 18662 of the Revenue and Taxation Code, a buyer may be required to withhold an amount equal to 3⅓ percent of the sales price, or an optional gain on sale withholding amount certified by the seller in the case of a disposition of California real property interest by either: (a) A seller who is an individual, trust, estate, or when the disbursement instructions authorize the proceeds to be sent to a financial intermediary of the sellers; or (b) A corporate seller that has no permanent place of business in California immediately after the transfer of title to the California property. The buyer may become subject to penalty for failure to withhold an amount equal to the greater of 10 percent of the amount required to be withheld or five hundred dollars ($500). However, notwithstanding any other provision included in the California statutes referenced above, no buyer will be required to withhold any amount or be subject to penalty for failure to withhold if any of the following apply: (a) The sale price of the California real property conveyed does not exceed one hundred thousand dollars ($100,000); (b) The seller executes a written certificate, under the penalty of perjury, certifying that the seller is a corporation with a permanent place of business in California; (c) The seller, who is an individual, trust, estate, or a corporation without a permanent place of business in California, executes a written certificate, under the penalty of perjury, of any of the following: (i) The California real property being conveyed is the seller's or decedent's principal residence (within the meaning of Section 121 of the Internal Revenue Code (IRC)); (ii) The last use of the property being conveyed was use by the transferor as the transferor's principal residence (within the meaning of IRC Section 121); (iii) The California real property being conveyed is, or will be, exchanged for property of like kind (within the meaning of IRC Section 1031), but only to the extent of the amount of gain not required to be recognized for California income tax purposes under IRC Section 1031; (iv) The California real property has been compulsorily or involuntarily converted (within the meaning of IRC Section 1033) and the seller intends to acquire property similar or related in service or use so as to be eligible for nonrecognition of gain for California income tax purposes under IRC Section 1033; or (v) The California real property transaction will result in a loss or net gain not required to be recognized for California income tax purposes. The seller is subject to penalty for knowingly filing a fraudulent certificate for the purpose of avoiding the withholding requirement.

21. SUPPLEMENTAL PROPERTY TAXES: PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1102.6C, THE FOLLOWING DISCLOSURE IS HEREBY PROVIDED: "CALIFORNIA PROPERTY TAX LAW REQUIRES THE ASSESSOR TO REVALUE REAL PROPERTY AT THE TIME THE OWNERSHIP OF THE PROPERTY CHANGES. BECAUSE OF THIS LAW, YOU MAY RECEIVE ONE OR TWO SUPPLEMENTAL TAX BILLS, DEPENDING ON WHEN YOUR LOAN CLOSES. THE SUPPLEMENTAL TAX BILLS ARE NOT MAILED TO YOUR LENDER. IF YOU HAVE ARRANGED FOR YOUR PROPERTY TAX PAYMENTS TO BE PAID THROUGH AN IMPOUND ACCOUNT, THE SUPPLEMENTAL TAX BILLS

(CONTINUED)

Seller's Initials: _____/_____                                      Buyer's Initials: _____/_____

Date:  December 8, 2020                                                    Escrow No.:  049541

Page 7 of 9:  Additional instructions made a part of previous pages as fully incorporated therein.

WILL NOT BE PAID BY YOUR LENDER. IT IS YOUR RESPONSIBILITY TO PAY THESE SUPPLEMENTAL BILLS DIRECTLY TO THE TAX COLLECTOR. IF YOU HAVE ANY QUESTIONS CONCERNING THIS MATTER, PLEASE CALL YOUR LOCAL TAX COLLECTOR'S OFFICE." If there is an impound account for taxes, the borrower is advised to inquire with the lender to determine if the supplemental tax bill will be paid by the lender from the impound account. Tax bills issued AFTER the close of escrow shall be handled or prorated directly between the Parties outside of escrow. Escrow Holder shall prorate taxes at the close of escrow based on the latest available tax statement and is relieved of any and all liability for taxes and/or prorations necessary after close of escrow as a result of supplemental tax bills issued by the tax assessor.

22.  PERSONAL PROPERTY TAXES:  Escrow Holder is not to be held responsible in any way whatsoever for any personal property taxes which may be assessed against any former or present owner of the property that is the subject of this escrow transaction, nor for the corporation or license tax of any corporation as a former or present owner.

23.  PRELIMINARY CHANGE OF OWNERSHIP REPORT:  California Revenue and Taxation Code Section 480.3 requires that a Preliminary Change of Ownership Report be completed and certified by the transferee and filed concurrently with the recording of any document that reflects a change of ownership in real property. The Parties herein agree to complete and sign said report and deliver same to Escrow Holder for filing, as necessary. The Parties understands and acknowledges that the recorder's office may charge a non-refundable fee of twenty dollars ($20.00) should the fully completed/certified report not accompany the conveyance document. If the recorder's office charges such a fee, the Party benefitted by the recording of the transfer document shall be charged the fee at close of escrow. In such event, a Standard Change of Ownership Statement will be mailed to the transferee by the office of the county assessor. Further, if Buyer fails to file said form upon the request of the county assessor after the close of escrow, severe penalties may be assessed against the Buyer.

24.      PROPRIETARY INFORMATION:  Escrow Holder is relieved of any duty, responsibility, and/or liability relative to disclosure of the proprietary information of the Parties and/or agents to this or any other escrow transaction. Such propriety information includes, but is not limited to, any (A) sale, resale, loan, exchange, or other transaction involving the real property and/or personal property that is the subject of this escrow transaction or (B) benefit, including but not limited to financial gain or profit, involving the real property and/or personal property that is the subject of this escrow transaction. Escrow Holder shall be relived of any and all liability if such proprietary information is disclosed as necessary for Escrow Holder to comply with the instructions of the Parties or if requested by a lender, agent, governmental agency, or any other entity entitled to such propriety information. Escrow Holder is specifically authorized to furnish copies of all escrow instructions, amendments thereto, preliminary title reports, closing statements and/or related documentation to the agents and/or attorneys representing any party to this escrow transaction, as may be requested by them, without obtaining any further authorization from Buyer or Seller.

25.  NOTIFICATION OF DISHONORED CHECKS:  If any check submitted to Escrow Holder is dishonored upon presentment for payment, Escrow Holder is authorized to notify all Parties and/or their respective agents of such nonpayment. The Party receiving credit for the deposit agrees to pay a reasonable fee to Escrow Holder for the returned check.

26.  ACCEPTANCE AND VERACITY OF SIGNATURES:  Escrow Holder shall not be responsible or liable in any manner for the sufficiency or correctness as to form, manner of execution, or validity of any document deposited with Escrow Holder relative to the identity, authority, or rights of any person executing the same. All signatures submitted into this escrow transaction shall be construed as unconditional approval of the within document as to form, content, terms, and conditions. Escrow Holder shall have no obligation to verify, and will not verify, the authenticity of any signature on any document made relative to this escrow transaction. Escrow Holder shall not be liable or responsible for any loss that may occur because of forgeries, fraud, or false representations made or involving the Parties to this escrow transaction, any third Parties, the agents or any other person or entity.

27.      ACCEPTABILITY OF COUNTERPARTS:  These instructions may be executed in counterparts, each of which shall be deemed an original regardless of the date of its execution and delivery. All such counterparts together shall constitute one and same document.

28.  STANDARDIZED FORMS:  Escrow Holder is to use Escrow Holder's usual document forms or the usual forms of any reliable forms company or any title company and in the instructions insert dates and terms on the instruments if incomplete when executed. Escrow Holder is authorized to use any standardized, preprinted form in order to comply with these instructions. Escrow Holder is authorized to use Escrow Holder's own form or any form produced by any reliable forms company or any title company. Excepting Escrow Holder's own form, Escrow Holder shall not be liable for the correctness or sufficiency of such standardized preprinted forms.

29.  NEW FINANCING:  Escrow Holder is not to be responsible or concerned with the terms of any new financing obtained by Buyer or the contents of any loan documents. Escrow shall have no liability or responsibility relative to the new financing except to order transmission of loan documents to Escrow Holder, transmit the loan documents to the appropriate Parties for execution, and transmit the executed loan documents to the lender. The Parties understand and agree that Escrow Holder is not involved or concerned with the approval or processing of any loan or the contents and effect of any loan documents prepared by a lender. Escrow Holder is not responsible for any lender's instructions which require Escrow Holder to perform obligation or duties beyond those required by law or which requires Escrow Holder to assume liability for the lender's regulatory duties and responsibilities. Further, Escrow Holder shall have no obligation to agree to instructions from a lender which threaten to transfer liability or penalize Escrow Holder.

30.  MASTER/DUAL CLOSING STATEMENT:  The Parties are hereby made aware that certain lenders may require a copy of the Master/Dual Closing Statement, Seller Closing Disclosure and/or records showing all deposits and disbursements occurring as part of this escrow transaction. Escrow Holder is hereby authorized and instructed by the Parties to release the Master/Dual Closing Statement and other lender requested document as required. Said information may be disclosed to the Buyer as part of the Buyer's Closing Disclosure by the lender.

31.  RESPA GUIDELINES:  The undersigned Parties acknowledge that in order for Escrow Holder to comply with the Real Estate Settlement Procedures Act ("RESPA") some of the costs and charges may need to be itemized on the lending disclosures in a fashion that differs from the terms agreed to by the parties. Said costs and charges may include, but are not limited to, the title policy fees and documentary transfer taxes. Escrow Holder is hereby authorized and instructed to comply with these RESPA guidelines, as necessary. Said charges and credits shall not change the amount of any other credits between the Parties.

32.  PROPERTY INSURANCE:  Excluding transactions whereby the subject property is a parcel of vacant land, Buyer is made aware that, prior to close of escrow, property insurance coverage should be obtained with sufficient liability and replacement cost. If the Buyer is obtaining new financing insurance coverage will be a condition of the loan prior to funding. Buyer shall deposit sufficient funds to pay for the first year's premium per invoice submitted by insurance agent. In the event, subject property is covered by a blanket master policy of insurance, Escrow Holder is to order a certificate thereof for the Buyer and order loss payable endorsements for beneficiaries of trust deeds being recorded herein. Should Buyer desire fire insurance on personal property, they are to obtain same outside of escrow. If Buyer is purchasing the subject property as an all cash transaction, without financing, Escrow Holder shall have no responsibility whatsoever to order a certificate of insurance.

33.  ASSIGNMENT OF PROPERTY INSURANCE:  Seller represents and warrants, and Escrow Holder shall be fully protected in assuming that, as to any property insurance policy handed to Escrow Holder, such policy is in force, has not be hypothecated, and that all necessary premiums therefore have been paid. Escrow Holder will transmit for assignment, any insurance policy handed Escrow for use in this escrow transaction, but Escrow Holder

(CONTINUED)

Seller's Initials:  _____/_____                    Buyer's Initials:  _____/_____

Date:  December 8, 2020                                                    Escrow No.:  049541

Page 8 of 9:  Additional Instructions made a part of previous pages as fully incorporated therein.

shall not be responsible for verifying the acceptance of the assignment and policy by the insurance company. ESCROW HOLDER WILL MAKE NO ATTEMPT TO VERIFY THE RECEIPT OF THE REQUEST FOR ASSIGNMENT BY THE ISSUING COMPANY. The Buyer is hereby placed on notice that if the Insurance company should fail to receive said assignment, the issuing company may deny coverage for any loss suffered by Buyer. IT IS THE OBLIGATION OF THE BUYER OR HIS REPRESENTATIVE TO VERIFY THE ACCEPTANCE OF THE ASSIGNMENT OF THE POLICY BY THE ISSUING COMPANY.

34.  TITLE INSURANCE: Escrow Holder shall order title insurance from the title company designated by the Parties. If requested in writing by the mutual instructions of the Parties or upon the request of any lender, Escrow Holder shall provide copies of the preliminary report of title to them without liability as to its contents. The Parties acknowledge that the title insurance policies to be issued by the title company shall be delivered directly from the designated title company to the appropriate Parties after the close of escrow. The Parties agree that matters regarding that title insurance are between the title company and the insured Party and not Escrow Holder.

35.  AUTHORIZATION TO USE SUB-ESCROW AGENT: Escrow Holder is authorized to use the title company as a sub-escrow agent for the handling of funds and documents in this escrow transaction. Escrow Holder is to comply with all sub-escrow agent's instructions and requirements, and Escrow Holder is authorized to deliver funds or documents to said sub-escrow agent at any time during the course of this escrow transaction as Escrow Holder deems appropriate. The Parties agree to pay the fee for such sub-escrow service as charged by the title company.

36.  BENEFICIARY DEMANDS AND STATEMENTS: From funds due, Escrow Holder is authorized to pay at the close of escrow, any encumbrances of record, plus accrued interest, charges and bonus if any, and/or pay any delinquent monthly installments(s) on existing encumbrance(s) as disclosed by a beneficiary demand or statement without additional approval. Should a Party wish to pre-approve any such beneficiary demand or statement, the Party shall deliver separate and specific written instruction to Escrow Holder prior to the close of escrow. Escrow Holder is not responsible for the contents or accuracy of any beneficiary demand or statement delivered to Escrow Holder by the beneficiary. The Parties are aware that payoffs of encumbrances are done by the insuring title company, not Escrow Holder, and agree to seek any redress directly from the beneficiary and/or title company should a dispute arise regarding said payoff. The Parties are aware some lenders require payment of loans to offices outside of the area and/or outside of the state. The Parties are advised that interest will continue to accrue on any outstanding loans until the loan is paid in full, regardless of the date of close of escrow. The title company may charge messenger fees, wire fees, and/or overnight fees, which the benefitted Party agrees to pay at close of escrow.

37.  LINE OF CREDIT PAYOFF INDEMNIFICATION AND CANCELLATION: The undersigned Parties hereby indemnify and hold the title company and Escrow Holder harmless from incurring any costs or additional charges, interest, and advances made but not disclosed on the beneficiary demand or statement provided for the payoff of that certain equity line of credit deed of trust (hereinafter "line of credit") shown on preliminary title report, if any. The Parties warrant and represent that instructions to the beneficiary have been made to freeze the line of credit, that no advance on the line of credit has been made since the opening of this escrow transaction, and that no advance will be made on the line of credit prior to close of escrow.. In the event, after receipt of payoff, the beneficiary makes demand for additional funds, the undersigned Parties agree to deposit those funds immediately with the title company or Escrow Company and authorizes the title company to utilize those funds to effectuate the close of the line of credit. Upon payoff of the line of credit, Escrow Holder is hereby instructed to request that the beneficiary cancel said line of credit.

38.  PRORATIONS AND ADJUSTMENTS: Escrow Holder is instructed to make all prorations and adjustments on the basis of a thirty (30) day month. Escrow Holder is to use information contained on latest available tax statement, rental statement, beneficiary's statement, insurance statement, or other statement as delivered to Escrow Holder for the prorations provided for herein.

39.  RECORDING OF DOCUMENTS: The Parties authorize the recordation of any instrument delivered through this escrow transaction if necessary or proper for the issuance of the required policies of title insurance or as necessary for close of escrow. Recording fees shall be charged to the account of the benefited Party unless instructed otherwise by the Parties in writing.

40.  DELIVERY OF DEED: Regardless of the date of execution or transmission to Escrow Holder of the deed, same shall be deemed delivered ONLY upon recordation through this escrow transaction. The phrase "close of escrow" as used in this escrow transaction shall mean the date on which documents are recorded, unless otherwise specified.

41.  ASSIGNMENT OF FUNDS: If a Party unilaterally assigns or orders the proceeds of this escrow transaction to be paid to other than the original parties to this escrow, such assignment or order shall be subordinate to the expenses of this escrow transaction, liens of record on the subject property, and payments directed to be made by Parties to this escrow transaction. If the result of such assignment or order would leave the escrow without sufficient funds to close, then Escrow Holder is directed to close nevertheless and pay such assignments or orders only out of the net proceeds due the Party assigning their funds except for such assignments or orders, and to pay them in the order in which such assignments or orders are received by Escrow Holder. Escrow Holder is not to be concerned with the balance remaining unpaid, if any.

42.  DISBURSEMENT OF FUNDS AND DELIVERY OF DOCUMENTS: All disbursements are to be made by the Escrow Holder's trust account check unless instructed otherwise in writing. Escrow Holder will not indemnify any payee or guarantee signatures of any person or entity at any financial institution. Generally, Escrow Holder or its sub-escrow agent will disburse funds, including net proceeds and payment for encumbrances of record, on the date the escrow closes; however, there are circumstances which may arise wherein said disbursements could be delayed by one or two business days. Any funds disbursed during or at the close of escrow will be issued jointly to the Parties designated as payee unless Escrow Holder is instructed otherwise in writing by all designated payees. The funds representing loan and/or sale proceeds will be disbursed jointly to all persons who were the record owners of the subject property. All disbursements of funds and/or delivery of other documents or instruments concerning this escrow transaction will be mailed to the entitled Party by regular first class mail, postage prepaid, at the last address provided to Escrow Holder. However, at Escrow Holder's discretion, Escrow Holder may send funds and/or other documents by certified or registered mail, overnight delivery, or messenger, in which case the Party for whom the delivery was made agrees to pay the costs.

43.  REPEAT CUSTOMERS: Escrow Holder may provide a fee discount to customers who have completed one or more escrows with Escrow Holder within the last two (2) years, upon request. Said discount will be provided solely to the repeat customer irrespective of the agreement of the Parties relative to the division of escrow fees.

44.  SEVERABILITY: In the event any escrow instruction or supplemental instruction in this escrow transaction, including these general provisions, is held invalid by judicial proceedings, the remaining shall continue to be operative and enforceable.

45.  CONFLICTING INSTRUCTIONS: If conflicting demands or notices are made or served upon Escrow Holder or any controversy arises between the Parties or with any third person arising out of or relating to this escrow transaction, Escrow Holder shall have the absolute right to withhold and stop all further proceedings in, and in performance of, this escrow transaction until Escrow Holder receives written notification satisfactory to Escrow Holder of the settlement of the controversy by written agreement of the Parties, or by the final order or judgment of a court of competent jurisdiction.

46.  MUTUAL CANCELLATION INSTRUCTION REQUIREMENTS: The Parties acknowledge that they are on notice that Escrow Holder shall exercise its discretion to require mutual or matching cancellation instructions instructing Escrow Holder on how the deposit is to be released, signed by all Parties and deposited with Escrow Holder prior to releasing any deposit held by Escrow Holder relative to this escrow transaction.

(CONTINUED)

Seller's Initials_____/_____                                    Buyer's Initials:  _____/_____

Date:  December 8, 2020

Escrow No.:  049541

Page 9 of 9:  Additional Instructions made a part of previous pages as fully incorporated therein.

47.  CANCELLATION FEES:  In the event of cancellation or any other termination of this escrow transaction, the Parties agree to pay Escrow Holder for any costs or expenses which Escrow Holder may have incurred or become obligated for pursuant to this escrow transaction and a reasonable escrow fee for the services performed to date.  Such costs and expenses, if any, and Escrow Holder's fee shall be deposited with Escrow Holder before any cancellation or other termination is effective.  The Parties agree that said charges for costs, expenses and fees may be apportioned between the Parties in a manner which Escrow Holder, in Escrow Holder's sole discretion, considers equitable, and that Escrow Holder's decision in that regard will be binding and conclusive upon the Parties unless specifically agreed to or determined by a court of competent jurisdiction.  In the event of failure to pay costs, expenses, and fees due hereunder, on demand, the Parties agree to pay reasonable fees for any attorney services which may be required to collect such fees or expenses.  Upon payment of such cancellation fees, Escrow Holder is authorized to return documents and funds to the respective Parties depositing same, or for whose benefit an unconditional deposit was made; or to void executed instruments as appropriate.

48.  TIME IS OF THE ESSENCE:  Time is of the essence in these instructions.  In the event that the conditions of this escrow transaction have not been complied with at the expiration of the time provided for herein, or any extension thereof, Escrow Holder is instructed to complete the same at the earliest possible date thereafter, unless written demand upon Escrow Holder to cancel this Escrow or for the return of the money and/or instruments is deposited by one or more Parties.  If the date by which the parties' performances are due shall be other than Escrow Holder's regular business day, such performances shall be due on Escrow Holder's next succeeding business day.

49.  ABANDONMENT OF ESCROW TRANSACTION:  Escrow Holder duties and functions related to this escrow transaction shall terminate six (6) months following the date last set for close of escrow unless the escrow transaction has closed or cancelled.  At such time, Escrow Holder shall have no further obligations as Escrow Holder except to disburse funds and documents pursuant to written instructions and to interplead or otherwise dispose of funds and documents in accordance with a validly issued and validly served order from a court of competent jurisdiction.

50.  UNCASHED CHECKS:  In the event any check(s) issued through this escrow transaction or sub-escrow related hereto are uncashed or unnegotiated ("uncashed") Escrow Holder will make every effort to contact the payee and coordinate negotiation of the check(s).  The Parties acknowledge that Escrow Holder incurs significant expense in tracking uncashed checks, canceling and reissuing checks, and maintaining bank and accounting records of such checks.  Therefore, if re-issuance of the check is necessitated, Escrow Holder will require an instruction authorizing such re-issuance and is authorized to charge an additional services fee of twenty-five dollars ($25.00) which will be deducted from the payee's reissued check(s).

51.  ESCHEATMENT:  Any and all funds remaining in escrow three (3) years after the close of escrow or cancellation of this escrow transaction will be escheated to the State of California pursuant to the Unclaimed Property Law codified in California Code of Civil Procedure Section 1518.

52.  AUTHORIZATION TO INTERPLEAD FUNDS:  The Parties acknowledge that Escrow Holder has an absolute legal right to file a court action in interpleader.  In the event, such an action is filed, the Parties herein jointly and severally agree to pay all escrow fees, title fees, court costs, and litigation expenses, including attorney's fees, incurred in connection therewith, the amount thereof to be fixed and judgment to be reached by the court.  Upon filing of such action, Escrow Holder is fully released and discharged from any further performance of duties under the terms of this Escrow.

53.  RIGHT TO RESIGN:  At any time prior to the close of escrow, Escrow Holder, at its sole and absolute discretion and without liability to the Parties to this escrow transaction, may withdraw and resign from acting as Escrow Holder by providing ten (10) days prior written notice to the Parties at their last known addresses.  In such event, Escrow Holder shall be entitled to reasonable compensation for its escrow services performed and for all costs and expenses incurred in the resignation, including, but not limited to, attorney's fees.  Upon resignation, Escrow Holder shall return to the Parties who deposited the same, the balance of any funds it holds, along with any property or documents in its possession.  Alternatively, at the mutual instruction of the Parties, Escrow Holder shall deliver the funds, property, and documents to a new Escrow Holder.

54.  DESTRUCTION OF DOCUMENTS:  Escrow Holder is authorized to destroy or otherwise dispose of any and all documents, papers, escrow instructions, correspondence, records or other material pertaining to this escrow, at any time after five (5) years from the date of close of escrow, cancellation of this transaction, or the date of the last activity (whichever comes first), without liability and without further notice to the Parties.

55.  PRIVACY NOTICE:  This notification is in compliance with our obligations to comply with federal and state law to safeguard the Parties' non-public personal information.  Escrow Holder collects non-public personal information about the Parties from the following sources; a) Information Escrow Holder receives from the Parties on applications or other forms; b) Information about the Parties' transactions with Escrow Holder, Escrow Holder's affiliates, or others involved in the processing of the transaction; and c) Information Escrow Holder receives from a consumer reporting agency.  Escrow Holder does not disclose any non-public personal information about customers or former customers to anyone, except as permitted by law.  Escrow Holder restricts access to non-public information about the Parties to those employees who need to know that information to provide products or services to the Parties.  Escrow Holder maintains physical, electronic and procedural safeguards that comply with federal and state regulations to guard the Parties' non-public personal information.  By signing below, the undersigned Parties acknowledge that they have read and received a copy of this notification.

56.  PROHIBITION UPON GIVING LEGAL OR FINANCIAL ADVICE:  The Parties acknowledge and understand that Escrow Holder is not authorized to practice the law nor does Escrow Holder give financial advice.  The Parties are advised to seek legal and financial counsel and advice concerning the effect of this escrow transaction.  The Parties acknowledge that no representations have been made by Escrow Holder about the legal sufficiency, legal consequences, financial effects, or tax consequences of the within escrow transaction.

BUYERS:

RADONIX, INC., a California Corporation

By:  _____
        Shahram Tork

SELLERS:

_____
JOHN DANIEL FOX

Escrow No.: 049541
Date: December 9, 2020

EXHIBIT "A"

PARCEL 1:

LOT 23 OF TRACT NO. 8905, IN THE CITY OF NEWPORT BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 308, PAGES 27 TO 32 INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

PARCEL 2:

AN APPURTENANT NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS THROUGHOUT LOT 65 OF TRACT NO. 6905, AS SHOWN ON A MAP RECORDED IN BOOK 308, PAGE 27 TO 32 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, STATE OF CALIFORNIA

# EXHIBIT "2"



9:17 📧 📷 🔊 ...                    🛜 .ıl 69% 🔋

**Maryam**
01:28                    📹    📞    ❗

## DECEMBER 12, 2020

- House Price ........................................ $1.2M
- 75% LTV ........................................... $900k
- 1ˢᵗ 480 = payoff = $404
- 2ⁿᵈ 248 + CLOSING COST = $256K
- Total payoff .................................... ~~$760K~~
- Balance of the loan due to Fox- minus ........... $160K
- Down payment= 5%= $60K is a wash
- Closing cost & Title 1%= .......................... $9K
- Lender point 2%= ................................. $18K
- To Mary, 1% now and 1% in 4 months = ... $ 9K + ($9K later in 4/1/2021)
- To Rita, 1% = ..................................... $9K
- 3 payments = $21K = @$6.75K per month ....... $21K
- = Total ............................................ $76K
- Net Cr. Card & cash to Fox: ..................... $94K

▶  ──●────────────  1:02          00:11

▶  ──●────────────  0:28          00:17

# EXHIBIT "3"



# SECURITY LAND ESCROW COMPANY
10805 Paramount Blvd., Suite A · Downey, CA 90241
(562) 862-2129
Fax: (562) 869-5547

Printed: December 17, 2020   12:32pm

### MASTER ESTIMATED SETTLEMENT STATEMENT

PROPERTY:   509 VENTAJA
NEWPORT BEACH, CA 92660

BUYER:   RADONIX, INC.

SELLER:   JOHN DANIEL FOX

CLOSING/RECORD DATE:

ESCROW NO.:   049541

| SELLER DEBITS | CREDITS | | BUYER DEBITS | CREDITS |
|---|---|---|---|---|
| | | **FINANCIAL CONSIDERATION** | | |
| | 1,200,000.00 | Total Consideration | 1,200,000.00 | |
| | | New 1st Trust Deed - CENTER STREET LENDING, VIII SPE, LLC | | 900,000.00 |
| 300,000.00 | | New 2nd Trust Deed - J.D. FOX | | 300,000.00 |
| | | **PAYOFF CHARGES -** | | |
| | | **[Total Payoff $484,208.56]** | | |
| 448,433.38 | | Principal Balance | | |
| 17,961.62 | | Interest on Principal Balance from 03/01/2020 to 12/31/2020 | | |
| 16,981.41 | | Escrow overdraft | | |
| 75.00 | | Advanced Funds | | |
| 559.15 | | Late Charges | | |
| 30.00 | | Statement Fee | | |
| 168.00 | | Processing/Recording fee | | |
| | | **PAYOFF CHARGES -** | | |
| | | **[Total Payoff $257,612.01]** | | |
| 221,962.85 | | Principal Balance | | |
| 21,673.30 | | Interest on Principal Balance from 02/15/2020 to 12/07/2020 | | |
| 1,678.31 | | Interest on Principal Balance at $72.9700/day from 12/08/2020 to 12/31/2020 | | |
| 1,997.64 | | Late Charges | | |
| 3,370.00 | | P.C. Fees advanced | | |
| 5,000.00 | | Attorney fees | | |
| 1,929.91 | | Foreclosure Fee Advanced | | |
| | | **LOAN INFORMATION - CENTER STREET LENDING, VIII SPE, LLC** | | |
| | | **[Charges $42,030.00]** | | |
| 13,500.00 | | Origination Charge | | |
| 27,000.00 | | Brokerage Fee | | |

Escrow No.: 049541
Printed: December 17, 2020  12:32pm

Closing Date:
Date:  December 17, 2020

Page 2 of 2:

| SELLER | | | BUYER | |
| DEBITS | CREDITS | | DEBITS | CREDITS |
| 1,495.00 | | Processing Fee | | |
| 15.00 | | NHD fee | | |
| 20.00 | | Funding Fee | | |
| | | **COMMISSION CHARGES** | | |
| 19,125.00 | | MARYAM GOLBAKHSH - BROKER | | |
| | | **TITLE/TAXES/RECORDING CHARGES - irst American Title Company** | | |
| 2,813.00 | | Title - Owner's Title Insurance (optional) | | |
| 884.00 | | Title - Lender's Title Insurance | | |
| 200.00 | | Title - Other Buyer Policy Fee (carryback) | | |
| 200.00 | | Title - Messenger Fee | | |
| 125.00 | | Title - Sub Escrow Fee | | |
| 50.00 | | Title - Wire Fee | | |
| 200.00 | | Title - Endorsement Fee | | |
| 50.00 | | Recording Grant Deed | | |
| 200.00 | | Recording Trust Deed | | |
| 1,320.00 | | Transfer Tax - County to Orange County | | |
| 3,734.58 | | 1st half taxes + penalty | | |
| | | **ESCROW CHARGES - Security Land Escrow Company** | | |
| 1,950.00 | | Title - Escrow Fee | | |
| 2,250.00 | | Title - Buyers Escrow fee | | |
| 83,247.85 | | Net Proceeds | | |
| | | Total Refund | | |
| | | | $ 1,200,000.00 | $ 1,200,000.00 |
| $ 1,200,000.00 | $ 1,200,000.00 | TOTAL | | |

THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE

# EXHIBIT "4"

**RECORDING REQUESTED B**
First American Title Company

**AND WHEN RECORDED MAIL TO:**

RADONIX, INC. *Michelson #1700*
*Irvine, CA 92612*

THIS SPACE FOR RECORDER'S USE ONLY:

| Title Order No.: | Escrow No.: 049541 |
|---|---|
| AP#: 440-281-28 | **GRANT DEED** |

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX Is $1,320.00**
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area    [X] City of Newport Beach **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**JOHN DANIEL FOX, a Married Man, as his sole and separate property**

hereby GRANT(s) to:

**RADONIX, INC., a California Corporation**
the real property in the City of Newport Beach, County of Orange, State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF
Also Known as: 509 VENTAJA, NEWPORT BEACH, CA 92660

Dated December 9, 2020

JOHN DANIEL FOX

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_
On _12-17-2020_ before me, _L.D Garces_ A Notary Public personally appeared _John Daniel Fox_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

L.D. GARCES
Notary Public – California
Los Angeles County
Commission # 2180425
My Comm. Expires Jan 20, 2021

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE:

Escrow No.: 049541
Date: December 9, 2020

EXHIBIT "A"

PARCEL 1:

LOT 23 OF TRACT NO. 8905, IN THE CITY OF NEWPORT BEACH, COUNTY OF ORANGE, STATE OF
CALIFORNIA AS PER MAP RECORDED IN BOOK 308, PAGES 27 TO 32 INCLUSIVE OF MISCELLANEOUS
MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

PARCEL 2:

AN APPURTENANT NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS THROUGHOUT LOT 65 OF
TRACT NO. 6905, AS SHOWN ON A MAP RECORDED IN BOOK 308, PAGE 27 TO 32 OF MISCELLANEOUS
MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, STATE OF CALIFORNIA

# EXHIBIT "5"



# SECURITY LAND ESCROW COMPANY

10805 Paramount Blvd., Suite A • Downey, CA 90241
(562) 862-2129
Fax:  (562) 869-5547

Lawrence Garces
Escrow Officer

Date:  December 17, 2020
Escrow No.:  049541

## AMENDED ESCROW INSTRUCTIONS

Property Address:      509 VENTAJA,  NEWPORT BEACH, CA  92660

THE ABOVE NUMBERED ESCROW IS HEREBY AMENDED AND/OR SUPPLEMENTED AS
FOLLOWS:

To complete the sale price the undersigned buyer shall execute a sellers purchase money 2nd trust deed
and note in the amount of $300,000.00.   Said note shall be NO interest and shall be due and payable two
years from the close of escrow.
\
Said note shall contain the following provisions.

"In the event the trustor sells, conveys, alienates the said property or any interest therein, or is divested of
title in any other manner, any indebtedness or obligation secured hereby, irrespective of the maturity
dates expressed in the note secured hereby, upon demand and notice, shall immediately become due
and payable"

If the loan has not been paid by the maturity date said note shall not be in default but due upon the sale of
the property securing this note

There shall be no proration of taxes through this escrow.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.

SELLERS:

JOHN DANIEL FOX

BUYERS:

RADONIX, INC., a California Corporation

By:

Shahram Tork

# EXHIBIT "6"



# SECURITY LAND ESCROW COMPANY

10805 Paramount Blvd., Suite A • Downey, CA 90241
(562) 862-2129
Fax: (562) 869-5547

Lawrence Garces
Escrow Officer

Date:  December 17, 2020
Escrow No.:  049541

Property Address:            509 VENTAJA  NEWPORT BEACH, CA  92660

## AMENDED INSTRUCTIONS TO PAY COMMISSION

At the close of your above-numbered escrow, you are authorized and instructed to pay the following:

Pay Commission to            MARYAM GOLBAKHSH -            $19,125.00
                             BROKER

                             , CA
                             Agent:

TOTAL COMMISSION                                          $19,125.00

**SELLERS:**

_____
JOHN DANIEL FOX

MARYAM GOLBAKHSH - BROKER

BY: _____
                Authorized Signature

License # _____

# EXHIBIT "7"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

29.00

*$R 0 0 1 2 3 7 5 5 3 2 $*

2020000764290 8:00 am 12/24/20

7 507A D11 A36   4

0.00 0.00 0.00 0.00 9.00 0.00 0.000.000.00 6.00

**RECORDING REQUESTED BY:**
irst American Title Company

**AND WHEN RECORDED MAIL TO:**

J.D. FOX

509 VENTAJA
Newport Beach CA 92660

THIS SPACE FOR RECORDER'S USE ONLY:
Title Order No.:

Escrow No.: 049541

## SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

**THIS DEED OF TRUST, made December 17, 2020**                    A.P. #440-281-28

RADONIX, INC., a California Corporation, herein called **Trustor,**
whose address is _ and First American Title Company., a California Corporation, herein called Trustee, and JOHN DANIEL
FOX, a Married Man, as his sole and separate property, herein called **BENEFICIARY,**
WITNESSETH: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH
POWER OF SALE that Property in Orange County, California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF
Also Known as: 509 VENTAJA, NEWPORT BEACH, CA 92660
"In the event the trustor sells, conveys, alienates the said property or any interest therein, or is divested of title in
any other manner, any indebtedness or obligation secured hereby, irrespective of the maturity dates expressed in
the note secured hereby, upon demand and notice, shall immediately become due and payable"
TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right power and authority given to and
conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such
rents, issues and profits. **For the Purpose of Securing:** 1. Performance of each agreement of Trustor incorporated by
reference or contained herein. 2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and
any extensions or renewal thereof, in the principal sum of **$300,000.00** executed by Trustor in favor of Beneficiary or order. 3.
Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by
another note (or notes) reciting it is so secured.

**DATED December 17, 2020**                    RADONIX, INC., a California Corporation

By: _____
Shahram Tork

<div style="writing-mode: vertical">THIS DEED OF TRUST IS SECOND AND SUBJECT TO A FIRST DEED OF TRUST RECORDING CONCURRENTLY</div>

<div style="writing-mode: vertical">Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary tax (DTT).</div>

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document
to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_
On _12-17-2020_
before me, _L.D. Garces_
A Notary Public personally appeared
_Shahram Tork_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.
WITNESS my hand and official seal.

Signature _____

L.D. GARCES
(Seal)
Notary Public - California
Los Angeles County
Commission # 2180425
My Comm. Expires Jan 20, 2021

**To Protect the Security of This Deed of Trust, Trustor Agrees:** By the execution and delivery of this Deed of Trust and the note secured hereby, that the provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County October 18, 1961, and in all other counties October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, viz.:

| County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Kings | 792 | 833 | Placer | 895 | 301 | Sierra | 29 | 335 |
| Alpine | 1 | 250 | Lake | 362 | 39 | Plumas | 151 | 5 | Siskiyou | 468 | 181 |
| Amador | 104 | 34 | Lassen | 171 | 471 | Riverside | 3005 | 523 | Solano | 1105 | 182 |
| Butte | 1145 | 1 | Los Angeles | T2055 | 899 | Sacramento | 4331 | 62 | Sonoma | 1851 | 389 |
| Calaveras | 145 | 152 | Madera | 810 | 170 | San Benito | 271 | 383 | Stanislaus | 1715 | 456 |
| Colusa | 296 | 617 | Marin | 1508 | 339 | San Bernardino | 5567 | 61 | Sutter | 572 | 297 |
| Contra Costa | 3978 | 47 | Mariposa | 77 | 292 | San Francisco | A332 | 905 | Tehama | 401 | 289 |
| Del Norte | 78 | 414 | Mendocino | 579 | 530 | San Joaquin | 2470 | 311 | Trinity | 93 | 366 |
| Eldorado | 568 | 456 | Merced | 1547 | 538 | San Luis Obispo | 1151 | 12 | Tulare | 2294 | 275 |
| Fresno | 4626 | 572 | Modoc | 181 | 851 | San Mateo | 4078 | 420 | Tuolumne | 135 | 47 |
| Glenn | 422 | 184 | Mono | 52 | 429 | Santa Barbara | 1878 | 860 | Ventura | 2062 | 386 |
| Humboldt | 657 | 5327 | Monterey | 2194 | 538 | Santa Clara | 5336 | 341 | Yolo | 653 | 245 |
| Imperial | 1091 | 501 | Napa | 639 | 86 | Santa Cruz | 1431 | 494 | Yuba | 334 | 486 |
| Inyo | 147 | 598 | Nevada | 305 | 320 | Shasta | 684 | 528 | | | |
| Kern | 3427 | 60 | Orange | 5889 | 611 | San Diego | Series 2 Book 1961 Page 183887 | | | | | |

(which provisions, identical in all counties are printed on the reverse hereof) are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that he will observe and perform said provisions; and that the references to property, obligations, and parties set forth in this Deed of Trust.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

---

### DO NOT RECORD

## REQUEST FOR FULL RECONVEYANCE
### To be used only when note has been paid

To: Security Land Reconveyance Company, Trustee:          Dated:_____

The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed , on payment to you any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

| MAIL RECONVEYANCE TO | |
|---|---|
| | |
| | |
| | |
| | |

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

**DO NOT RECORD**

The following is a copy of provisions (1) to (14), inclusive, of the fictitious deed of trust, recorded in each county of California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

To Protect the Security of This Deed of Trust, Trustor Agrees:

1. To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and material furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

2. To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

3. To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

4. To pay; at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purpose; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

5. To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

6. That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such money(ies) received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

7. That by accepting payment of any sum secured hereby its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

8. That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

9. That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

10. That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

11. That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any convenant or warranty express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

12. Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

13. That this Deed applies to inures, to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether, or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

14. That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**EXHIBIT A**
Legal Description

The land hereinafter referred to is situated in the City of Newport Beach, County of Orange, State of California, and is described as follows:

Parcel 1:

Lot 23 of Tract No. 6905, in the City of Newport Beach, County of Orange, State of California, as per map recorded in Book 308, Pages 27 to 32 inclusive of Miscellaneous Maps, in the office of the County Recorder of said County.

Except therefrom all oil, oil rights, minerals, mineral rights, natural gas rights and other hydrocarbons by whatsoever name known that may be within or under the parcel of land hereinabove described, together with the perpetual right of drilling, mining, exploring and operating therefor and storing in and removing the same from said land or any other land, including the right to whipstock or directionally drill and mine from lands other than said land, oil or gas wells, tunnels and shafts into, through or across the subsurface of said land, and to bottom such whipstocked or directionally drilled wells, tunnels and shafts under and beneath or beyond the exterior limits thereof, and to redrill, retunnel, equip, maintain, repair, deepen and operate any such wells or mines, without, however, the right to drill, mine, store, explore and operate through the surface or the upper 500 feet of the subsurface of said land, as reserved in the deed from The Irvine Company recorded in Book 12415, Page 992, Official Records.

Parcel 2:

An appurtenant non-exclusive easement for ingress and egress throughout Lot 65 of Tract No. 6905, as shown on a map recorded in Book 308, Pages 27 to 32 inclusive of Miscellaneous Maps, records of Orange County, California.

APN: 440-281-26

---

| Exhibit A | Created: 12/22/2020 | CA0310-20043961-38 |

EXHIBIT "8"



# SECURITY LAND ESCROW COMPANY
10805 Paramount Blvd., Suite A • Downey, CA 90241
(562) 862-2129
Fax: (562) 869-5547

### SELLER'S FINAL SETTLEMENT STATEMENT

**PROPERTY:**  509 VENTAJA
NEWPORT BEACH, CA 92660

**DATE:**  December 28, 2020

**CLOSING DATE:**  December 24, 2020

**SELLER:**  JOHN DANIEL FOX

**ESCROW NO.:**  049541

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | 1,200,000.00 |
| Total Consideration | | |
| New 2nd Trust Deed – J.D. FOX | 300,000.00 | |
| | | |
| **PAYOFF CHARGES -** | | |
| **[Total Payoff $484,368.39]** | | |
| Principal Balance | 448,433.38 | |
| Interest on Principal Balance from 03/01/2020 to 12/31/2020 | 17,961.62 | |
| Escrow overdraft | 16,981.41 | |
| Advanced Funds | 75.00 | |
| Late Charges | 599.15 | |
| Current Late Charge | 119.83 | |
| Statement Fee | 30.00 | |
| Processing/Recording fee | 168.00 | |
| | | |
| **PAYOFF CHARGES -** | | |
| **[Total Payoff $257,871.23]** | | |
| Principal Balance | 221,962.85 | |
| Interest on Principal Balance from 02/15/2020 to 12/28/2020 | 23,205.76 | |
| Late Charges | 2,219.60 | |
| Due to Trustee | 183.11 | |
| Foreslosure Fee Advanced | 10,299.91 | |
| | | |
| **LOAN INFORMATION - CENTER STREET LENDING, VIII SPE, LLC** | | |
| **[Charges $43,942.50]** | | |
| Origination Charge | 13,500.00 | |
| Brokerage Fee to MARYAM GOLBAKHSH | 27,000.00 | |
| Processing Fee | 1,495.00 | |
| NHD fee | 15.00 | |
| Funding Fee | 20.00 | |
| Interest at $212.5000/day from 12/23/2020 to 01/01/2021 | 1,912.50 | |
| | | |
| **COMMISSION CHARGES** | 19,125.00 | |
| MARYAM GOLBAKHSH - BROKER | | |
| | | |
| **H.O.A./MANAGEMENT** | 345.00 | |
| Dues for December to NORTH BLUFF VILLAS | | |
| | | |
| **OTHER DEBITS/CREDITS** | 1,029.00 | |
| INSURA INSURANCE AGENCY for Homeowner's Insurance | | |

Date: December 28, 2020

Page 2 of 2

Escrow No.: 049541

| | DEBITS | CREDITS |
|---|---|---|
| **TITLE/TAXES/RECORDING CHARGES - Stewart Title of California** | | |
| Title - Owner's Title Insurance (optional) | 2,613.00 | |
| Title - Lender's Title Insurance | 1,030.00 | |
| Title - Messenger Fee | 60.00 | |
| Title - Sub Escrow Fee | 125.00 | |
| Title - Endorsement Fee | 25.00 | |
| Title - E Recording Fee | 10.00 | |
| Recording Grant Deed | 25.00 | |
| Recording Trust Deed | 118.00 | |
| Recording Trust Deed | 55.00 | |
| Transfer Tax - County to Orange County | 1,320.00 | |
| | | |
| **ESCROW CHARGES - Security Land Escrow Company** | | |
| Title - Escrow Fee | 1,950.00 | |
| Title - Buyers Escrow fee | 2,250.00 | |
| | | |
| **Net Proceeds** | 83,737.88 | |
| | | |
| **TOTAL** | $ 1,200,000.00 | $ 1,200,000.00 |

**SAVE THIS STATEMENT FOR INCOME TAX PURPOSES**

# EXHIBIT "9"

## NOTICE TO QUIT
## HOLDOVER AFTER SALE

TO:   Johnathan Daniel Fox,

AND ALL OTHERS IN POSSESSION of the premises known and described as:

509 Ventaja
Newport Beach, CA 92660 (Single Family Dwelling)

NOTICE IS HEREBY GIVEN THAT Radonix, Inc., a California Corporation, has purchased the above-described property and that title thereto has been duly perfected in her.

NOTICE IS FURTHER GIVEN, that within **three (3) days** after the service of this notice on you, you are required to deliver up possession of the premises described above to the owner or legal proceedings will be commenced against you to recover possession of said premises along with damages, court costs and necessary disbursements allowed by law, and such other damages as are allowed by law for such UNLAWFUL DETENTION.

This Notice is being given to you under the provisions of C.C.P. §1161a(b)(4).

Dated: March 2, 2021

_____
Law Offices of Liddle & Liddle,
A Professional Corporation
310 South Vermont Avenue
Glendora, California 91741
Attorney in fact for: Radonix, Inc., a California
Corporation
Owner.
Our File #21MA006

cc: client

STATE & FEDERAL FDCPA NOTICE: This is an attempt to collect a debt and any information obtained will be used for that purpose. The amount of rent owed is set forth above and is owed to the owner/lessor stated herein. You have 30-days after receipt of this notice to notify the debt collector in writing that the debt is disputed and to request written verification of the debt (which will otherwise be assumed to be valid) and the name and address of the original creditor if different from the owner/lessor noted above. Please note that your rights under FDCPA as set forth above will not modify or delay the owner/lessor's right to proceed under the Unlawful Detainer (Eviction) statutes, CCP §1161(2) et seq., prior to the expiration of the 30 day period set forth above.

# EXHIBIT "2"

# RADONIX ACTION

Case 8:23-ap-01132-MH   Doc 1   Filed 11/20/23   Entered 11/20/23 11:45:28   Desc
Main Document   Page 61 of 73
Electronically Filed by Superior Court of California, County of Orange, 05/19/2021 11:10:20 AM.
30-2021-01201867-CU-CO-CJC - ROA # 4 - DAVID H. YAMASAKI, Clerk of the Court By Hailey McMaster, Deputy Clerk.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):* | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)* |

JOHN DANIEL FOX, an individual; and DOES 1 through 100, inclusive

HARBOR/... SERVICES

2021 MAY 26   A 10:35

## YOU ARE BEING SUED BY PLAINTIFF:
## (LO ESTÁ DEMANDANDO EL DEMANDANTE):

RADONIX, INC., a California corporation

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>CENTRAL JUSTICE CENTER, 700 Civic Center Drive West Santa Ana, CA 92701 | **CASE NUMBER:** *(Número del Caso):*<br>30-2021-01201867-CU-CO-CJC<br><br>Judge Walter Schwarm |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Joe O'Connor, J.M. O'Connor Law Group, 120 Newport Center Drive, Newport Beach, CA 92660 - (949) 459-3380 joe@jmoclaw.com

| DATE:<br>*(Fecha)* 05/19/2021 DAVID H. YAMASAKI, Clerk of the Court | Clerk, by<br>*(Secretario)* H. McMaster | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*   Hailey McMaster
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:

3. [ ] on behalf of (specify):

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)   [ ] CCP 416.90 (authorized person)
   [ ] other *(specify)*:
4. [ ] by personal delivery on *(date)*:

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Electronically Filed by Superior Court of California, County of Orange, 05/19/2021 11:10:20 AM.
30-2021-01201867-CU-CO-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Hailey McMaster, Deputy Clerk.

Joe O'Connor (CA # 330661)
**J.M. O'Connor Law Group, PLLC**
120 Newport Center Drive
Newport Beach, CA 92660
Telephone: (949) 459-3380
Arizona - (480) 513-1400
*joe@jmoclaw.com*

2021 MAY 26  A 8 35

*Attorney for Radonix, Inc.*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

| | |
|---|---|
| RADONIX, INC., a California corporation; | **Assigned for All Purposes**<br>Judge Walter Schwarm |
| Plaintiff, | **Case No.:** 30-2021-01201867-CU-CO-CJC |
| vs. | **COMPLAINT FOR DAMAGES** |
| JOHN DANIEL FOX, an individual; and<br>DOES 1 through 100, inclusive, | **1. Breach of Contract**<br>**2. Trespass to Land**<br>**3. Quantum Meruit** |
| Defendants. | |

Plaintiff, RADONIX, INC., hereby alleges against Defendants, JOHN DANIEL FOX, and DOES 1 through 100, inclusive, as follows:

I.

THE PARTIES

1.    RADONIX, INC., ("Radonix") is a California corporation with its principal place of business in Orange County California.

2.    Defendant JOHN DANIEL FOX is believed to be a resident of Orange County, California, located in Newport Beach California.

-1-

3. The events and omissions complained of took place in Orange County California since the property identified in Plaintiffs Complaint is located in Newport Beach California.

<div align="center">JURISDICTION AND VENUE</div>

4. Defendant John Daniel Fox entered into a written contract for the sale of his single family residential property, located at 509 Ventaja, Newport Beach, California. ("Property") to Plaintiff Radonix, Inc.

5. The sale price for the Property was $1,200,000. Defendant agreed to carry a second trust deed in the amount of $300,000.

6. Upon the completion of the sale of the Property, Plaintiff Radonix paid off Defendants First Trust Deed loan and costs, in the approximate amount of $484,368.39 *(See Exhibit A)*.

7. Upon the completion of the sale of the Property, Plaintiff Radonix paid off Defendants Second Trust Deed loan and costs, in the approximate amount of $257,871.23. *(See Exhibit A)*

8. Upon the completion of the sale of the Property, escrow paid costs and commissions, in the approximate amount of $43,942.50. *(See Exhibit A)*

9. Upon the completion of the sale of the Property, escrow paid costs and commissions to Defendant as net proceeds, in the approximate amount of $83,737.88. *(See Exhibit A)*

9. The amounts in question exceeds of the jurisdictional minimum of this court.

<div align="center">FIRST CAUSE OF ACTION</div>

<div align="center">(Breach of Contract)</div>

10. Plaintiff re-allege Paragraphs 1-11, in haec verba.

11. Defendant's residential home located at 509 Ventaja, Newport Beach, California, ("The Property") was in danger of foreclosure.

<div align="center">-2-</div>

12.    Plaintiff Radonix agreed to purchase the Property for $1,200.000 from Defendant to prevent foreclosure and loss of Defendants equity in the Property.

13.    As a condition of the sale, Defendant agreed to carry a second trust deed upon the sale of the property, in the amount of $300,000.

14.    At the close of escrow, Defendant received approximately $83,737.88 in net proceeds from the sale of the property. *(See Exhibit A)*

15.    On or about December 17, 2020, the property closed escrow and the sale of the property to Radonix was completed and Defendant was no longer the owner of the property.

16.    As the previous owner of the Property, Defendant Fox had requested, but failed to execute a rental agreement to remain on the property as a tenant of Radonix.

17.    Defendant was notified on or about March 2, 2021 that he must vacate the property, pursuant to the sale of the Property on December 17, 2020. *(See Exhibit B)*

18.    Defendant has refused to vacate the property pursuant to the Residential Sales Agreement and Notice to Quit Holdover after Sale. *(See Exhibit B)*

19.    Defendant Fox has breach his contract by agreeing to sell his Property and then failing to vacate the Property after the sale.

20.    Defendant Fox is not a rental tenant, and has no written or oral agreement to remain on the Property without a written agreement.

21.    Defendant Fox has no legal right to remain on the property after the sale.

22.    Plaintiff Radonix has suffered damages as a result of Defendant Fox remaining on the Property without entering into a lease agreement or vacating the Property.

23.    Plaintiff Radonix has suffered damages as a result of Defendant Fox remaining on the Property, preventing Radonix from selling the property or renting the Property due to Defendant Fox failing to enter into a lease agreement or vacating the Property.

-3-

24.     Plaintiff Radonix has suffered damages in an amount of approximately $6,587.50 per month, to pay for the new loan on the Property secured by Radonix as a result of the sale and purchase, plus property taxes and insurance.

25.     Plaintiff Radonix continues to suffer damages in an amount of approximately $8,000.00 per month, plus costs from December 17, 2020 and continuing until Defendant Fox vacates the Property.

## SECOND CAUSE OF ACTION

### (Trespass to Land)

26.     Plaintiff re-alleges Paragraphs 1-25, in haec verba.

27.     At the close of escrow on December 17, 2020, Plaintiff Radonix took title to property located at, 509 Ventaja, Newport Beach, California.

28.     Defendant Fox intentionally remained on the property after the sale was completed.

29.     Defendant Fox occupied and controlled the property from the close of escrow, until now, by remaining on the property.

30.     Plaintiff Radonix did not give his permission for Fox to remain on the property without a written agreement. Fox exceeded Plaintiffs permission by remaining on the property without consent.

31.     Defendant Fox was later notified on or about March 2, 2021 that he must vacate the property, pursuant to the sale of the Property on December 17, 2020. *(See Exhibit B)*

32.     Defendant Fox exceeded Radonix permission by remaining on the property without compensating Radonix and/or entering into a lease agreement with Radonix.

33.     Plaintiff was actually harmed because Radonix could not rent the property to cover the loan payments, or sell the property to any third parties.

-4-

34.     Defendant's conduct was a substantial factor in causing harm to Radonix since Fox remained on the property, preventing Radonix from renting or leasing the property to another.

35.     A conditional or restricted consent to enter land creates a privilege to do so only insofar as the condition or restriction is complied. (Civic Western Corp., 66 Cal.App.3d at p. 17, quoting Rest.2d Torts §168.

37.     Plaintiff Radonix has suffered loss of market value due to Fox remaining on the property after the sale and close of escrow.

38.     Plaintiff Radonix has suffered a loss of use of the property because he was unable to lease or sell the property due to Fox remaining on the property without a rental or lease agreement or making rental or lease payments to Radonix.

## THIRD CAUSE OF ACTION

### (Quantum Meruit)

39.     Plaintiff re-alleges Paragraphs 1-38, in haec verba.

40.     Plaintiff has conferred a benefit upon Fox since Fox has remained on the subject property without paying any compensation to Radonix.

41.     In conferring this benefit upon Fox, Radonix has suffered an impoverishment by not being paid for the time Fox remained on the property because Radonix could not rent or sell the property.

42.     In conferring this benefit upon Defendant Fox, Defendant has been enriched.

43.     Defendant Fox has failed to compensate Radonix for its conferral of benefit.

44.     Due to Defendants failure to compensate Radonix for its conferral of benefit, Radonix has been damaged.

45.     Radonix is entitled to equitable relief in this matter as a remedy at law.

-5-

WHEREFORE, Plaintiff Radonix respectfully request this Court enter judgment in his favor and against Defendant Fox as follows:

A. Awarding Plaintiff the sum of damages to be determined at trial, and in the event of default, an award not less than $48,000.00;

B. Awarding Plaintiff its reasonable attorneys fees incurred herein pursuant to Pursuant to California Civil Code 1717;

C. Awarding Plaintiff its costs incurred herein pursuant to Pursuant to California Civil Code 1717;

D. Awarding Plaintiff pre-judgment and post-judgment interest on all sums awarded at the highest legal rate from the time each portion thereof became due until paid in full;

E. A Court Ordered injunction in Plaintiffs favor, requiring Defendant Fox to vacate the property permanently.

F. For such other and further relief as this Court deems just in the circumstances.

RESPECTFULLY SUBMITTED this 19th day of May, 2021

J.M. O'CONNOR LAW GROUP, PLLC

__/s/ Joe O'Connor_____
Joe O'Connor,

ORIGINAL e-filed this 19th. day of May , 2021 with Orange County Superior Court.

-6-

## VERIFICATION OF COMPLAINT

I, Joseph M. O'Connor, attorney for Plaintiff, certify and declare that I have read the foregoing Verified Complaint for Breach of Contract, Trespass to Land, and Quantum Meruit and know its contents.

I am the attorney acting on behalf of Plaintiff, Radonix, Inc., to this action. The matters stated in the document described above are true of known information and belief except as to those matters stated on information and belief, and as to those matters I believe them to be true.

Executed on May 19, 2021 in Newport Beach, California. I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Joseph M. O'Connor

*Attorney for Plaintiff Radonix, Inc.*

# Exhibit A



# SECURITY LAND ESCROW COMPANY

10805 Paramount Blvd., Suite A • Downey, CA 90241
(562) 862-2129
Fax: (562) 869-5547

## SELLER'S FINAL SETTLEMENT STATEMENT

| | |
|---|---|
| **PROPERTY:** 509 VENTAJA<br>NEWPORT BEACH, CA 92660 | **DATE:** December 28, 2020 |
| **SELLER:** JOHN DANIEL FOX | **CLOSING DATE:** December 24, 2020<br>**ESCROW NO.:** 049541 |

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 1,200,000.00 |
| New 2nd Trust Deed - J.D. FOX | 300,000.00 | |
| | | |
| **PAYOFF CHARGES -** | | |
| **[Total Payoff $484,368.39]** | | |
| Principal Balance | 448,433.38 | |
| Interest on Principal Balance from 03/01/2020 to 12/31/2020 | 17,961.62 | |
| Escrow overdraft | 16,981.41 | |
| Advanced Funds | 75.00 | |
| Late Charges | 599.15 | |
| Current Late Charge | 119.83 | |
| Statement Fee | 30.00 | |
| Processing/Recording fee | 168.00 | |
| | | |
| **PAYOFF CHARGES -** | | |
| **[Total Payoff $257,871.23]** | | |
| Principal Balance | 221,962.85 | |
| Interest on Principal Balance from 02/15/2020 to 12/28/2020 | 23,205.76 | |
| Late Charges | 2,219.60 | |
| Due to Trustee | 183.11 | |
| Foreslosure Fee Advanced | 10,299.91 | |
| | | |
| **LOAN INFORMATION - CENTER STREET LENDING, VIII  SPE, LLC** | | |
| **[Charges $43,942.50]** | | |
| Origination Charge | 13,500.00 | |
| Brokerage Fee to MARYAM GOLBAKHSH | 27,000.00 | |
| Processing Fee | 1,495.00 | |
| NHD fee | 15.00 | |
| Funding Fee | 20.00 | |
| Interest at $212.5000/day from 12/23/2020 to 01/01/2021 | 1,912.50 | |
| | | |
| **COMMISSION CHARGES** | | |
| MARYAM GOLBAKHSH - BROKER | 19,125.00 | |
| | | |
| **H.O.A./MANAGEMENT** | | |
| Dues for December to NORTH BLUFF VILLAS | 345.00 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| INSURA INSURANCE AGENCY for Homeowner's Insurance | 1,029.00 | |

Date: December 28, 2020

Escrow No.: 049541

Page 2 of 2:

|  | DEBITS | CREDITS |
|---|---|---|
| **TITLE/TAXES/RECORDING CHARGES - Stewart Title of California** | | |
| Title - Owner's Title Insurance (optional) | 2,613.00 | |
| Title - Lender's Title Insurance | 1,030.00 | |
| Title - Messenger Fee | 60.00 | |
| Title - Sub Escrow Fee | 125.00 | |
| Title - Endorsement Fee | 25.00 | |
| Title - E Recording Fee | 10.00 | |
| Recording Grant Deed | 25.00 | |
| Recording Trust Deed | 118.00 | |
| Recording Trust Deed | 55.00 | |
| Transfer Tax - County to Orange County | 1,320.00 | |
| **ESCROW CHARGES - Security Land Escrow Company** | | |
| Title - Escrow Fee | 1,950.00 | |
| Title - Buyers Escrow fee | 2,250.00 | |
| **Net Proceeds** | 83,737.88 | |
| **TOTAL** | $ 1,200,000.00 | $ 1,200,000.00 |

**SAVE THIS STATEMENT FOR INCOME TAX PURPOSES**

# Exhibit B

## NOTICE TO QUIT
## HOLDOVER AFTER SALE

TO:   Johnathan Daniel Fox,

AND ALL OTHERS IN POSSESSION of the premises known and described as:

509 Ventaja
Newport Beach, CA 92660 (Single Family Dwelling)

NOTICE IS HEREBY GIVEN THAT Radonix, Inc., a California Corporation, has purchased the above-described property and that title thereto has been duly perfected in her.

NOTICE IS FURTHER GIVEN, that within three (3) days after the service of this notice on you, you are required to deliver up possession of the premises described above to the owner or legal proceedings will be commenced against you to recover possession of said premises along with damages, court costs and necessary disbursements allowed by law, and such other damages as are allowed by law for such UNLAWFUL DETENTION.

This Notice is being given to you under the provisions of C.C.P. §1161a(b)(4).

Dated: March 2, 2021

Law Offices of Liddle & Liddle,
A Professional Corporation
310 South Vermont Avenue
Glendora, California 91741
Attorney in fact for: Radonix, Inc., a California
Corporation
Owner.
Our File #21MA006

cc: client

STATE & FEDERAL FDCPA NOTICE: This is an attempt to collect a debt and any information obtained will be used for that purpose. The amount of rent owed is set forth above and is owed to the owner/lessor stated herein. You have 30-days after receipt of this notice to notify the debt collector in writing that the debt is disputed and to request written verification of the debt (which will otherwise be assumed to be valid) and the name and address of the original creditor if different from the owner/lessor noted above. Please note that your rights under FDCPA as set forth above will not modify or delay the owner/lessor's right to proceed under the Unlawful Detainer (Eviction) statutes, CCP §1161(2) et seq., prior to the expiration of the 30 day period set forth above.